BAXTER, REED & COMPANY v. C. W. ROLLINS & COMPANY; C. W. ROLLINS, ALICE SCHLEITER AND RESSA SCHLEITER, Appellants.

90 217
s99 229
90 217
s110 310

Scope of Partnership: CONSTRUCTION OF CONTRACT. A contract for carrying on the egg business, "for one year and as much longer as the parties may mutually desire," providing for the erection of a large building, for the putting in of twenty-five thousand dollars into the business and that, "when the stock is sold, the original investment shall be deducted and the balance divided," creates a partnership for a continuing business in which each partner has, in the absence of express restriction, the usual powers of binding the firm. (2)

INACCURATE PARTNERSHIP SIGNATURE. The signature, "C. W. Rollins & Co." will bind the firm of "C. W. Rollins," if it be the intent thereby to bind that firm, and the loan is for the firm and so treated by the loaner. (1)

LOANS. Under a partnership contract, the terms of which were known to the loaner, all the money to be used was to be furnished by the two partners, and no provision was made for any other source. By subsequent verbal agreement between the partners, not communicated to the loaner, the partners furnished but half the amount named in said original contract, and a third partner obtained a loan, representing that the others had failed to furnish the amount originally agreed on, held, that the loaners were, by their knowledge of the original agreement, put upon inquiry as to its subsequent modification, and that the partnership was not liable for the loan. (3)

Deposit of Partnership Funds: LIABILITY OF BANK TO PARTNERS. Where a business was carried on in the name of R., who had general supervision of it under a contract with his partners providing that proceeds of sales were to reimburse the advances made by those partners, deposits made by R., are partnership funds until after settlement between the partners, and the bank need not account to the

partners who made advances for moneys paid out on the checks of R.,
at least, where no claim is made that the bank has appropriated any
of the funds to pay individual debts of R.   (4)

*Appeal from Ida District Court.*—HON. GEORGE W.
PAINE, Judge.

THURSDAY, FEBRUARY 1, 1894.

PLAINTIFFS bring this action to recover the balance
due upon a promissory note. They allege that the
defendants were a copartnership in the business of
buying, preserving and shipping eggs at Ida Grove,
said business being under the management and control
of the defendant Rollins. That at the request of said
Rollins, as a member of said partnership, plaintiffs, a
partnership doing a general banking business at Ida
Grove, loaned to said defendant partnership, to be
used in said business, three thousand dollars, for which
said partnership made and delivered to plaintiffs the
promissory note set out and sued upon. The note set
out is signed "C. W. Rollins & Co." The defendants
Alice and Ressa Schleiter alone answered. They denied
that they ever had anything to do with said note; that
they were ever connected with a partnership under the
name of C. W. Rollins & Co.; and deny that said
Rollins had any right or authority to pledge the credit
of these defendants to borrow any money for said
business, and allege that the plaintiffs well knew that
fact. They alleged, as further answer, that they did
have a business transaction with said Rollins under a
contract in writing, which is as follows, and that there
was no other or different agreement, verbal or written,
between them:

"This article of agreement, entered into this eighth
day of October, 1889, and between C. W. Rollins, Mrs.
Alice Schleiter, and Miss Ressa Schleiter, witnesseth:
That the parties hereto have entered into a partnership

for the purpose of carrying on the egg business in Ida Grove, Iowa, preserving eggs with Judd's Egg Preserving Compound, the business to be carried on in the name of C. W. Rollins, he to attend to all business, and have the general superintendence of the work. That the parties hereto shall put up at once, or as soon as possible, an egg house in said Ida Grove, Iowa, to be not less than fifty by one hundred feet, two stories high and a basement; and for the purpose of carrying on the business the said Mrs. Alice Schleiter and Ressa Schleiter agree to furnish ($25,000) twenty-five thoussand dollars, as needed in the business, and out of that amount money shall be used, as much as is needed, to erect said building, and in the spring said C. W. Rollins shall replace in said fund the one half of what the building has cost. The said C. W. Rollins is to make no charge for his services, but when the stock is sold, so put down, the original investment shall be deducted, and the balance equally divided, C. W. Rollins to have one half and the other parties one half, and any stock and material on hand shall in the same manner be owned equally—C. W. Rollins one half and the other parties one half. Said contract to continue for one year and as much longer as parties may mutually desire to continue the business.

"C. W. Rollins.
"Alice Schleiter.
"Ressa Schleiter."

They allege that by the terms of said contract said Rollins had no authority to execute the note in question, or any other notes, nor to pledge the credit of these defendants or of said business for the purpose of borrowing money. These defendants, by way of counterclaim, alleged that they furnished a large amount of money to said Rollins in pursuance of said contract, with which the building was constructed, and a large amount of eggs purchased and preserved; that there-

after said eggs were shipped and sold, and the proceeds of the sale to the amount of two thousand, seven hundred and sixty dollars were wrongfully deposited in the bank of the plaintiff company; that said proceeds should have been paid to these defendants, but that the plaintiff wrongfully retained, and still retains, said money, and refuses to pay the same to these defendants; that the plaintiff company was fully advised of the terms and conditions of said contract prior to the receipt of said money, and that the same belongs to these defendants. They ask judgment against the plaintiffs for said sum, and that, if they are held liable on said promissory note, this amount may be allowed as a set-off, and credited thereon, and that they have judgment for the balance. Plaintiffs, in reply, admit that the defendants made the written contract set out, that they erected the building as alleged, and say they have neither knowledge nor information sufficient to form a belief as to whether the defendants furnished money as alleged. They admit that a large quantity of eggs was purchased and preserved, but deny any knowledge as to what the sales amounted to. They deny every other allegation in the counterclaim, except that they knew of the terms and conditions of said contract. A jury being waived, the cause was submitted to the court upon the issues, and judgment entered against the defendants Alice and Ressa Schleiter on the notes sued upon, and dismissing their counterclaim, from which judgment they appeal.—*Reversed.*

*Storey & Gaines* for appellants.

*Homer S. Bradshaw* and *Warren & Buchanan* for appellees.

GIVEN, J.—I. Appellants' first contention is that they are not liable on the note in suit, because it is not executed in the name of the partnership of which they

were members. It will be observed that the contract
provides that the business was to be carried on in the
name of C. W. Rollins, and that the note is signed
"C. W. Rollins & Co." In *Barcroft v. Haworth*, 29
Iowa, 465, it is said: "To bind the firm, it was not
necessary that the contract should be signed by all the
partners, nor, if there was a firm name, that it should
be used. If, by the method adopted, it was the inten-
tion to bind the firm, and especially when it was so ac-
cepted, and credit given upon the strength of the firm,
it would be equally as binding as though signed in the
most formal and regular manner." See, also, *Seekell
v. Fletcher*, 53 Iowa, 330, 5 N. W. Rep. 200. If Mr.
Rollins had authority to bind the defendant firm for
this borrowed money, and it was loaned upon the credit
and for the benefit of said firm, it is certainly clear that
the appellants are liable therefor. There is a dispute
as to whether this money was borrowed for the benefit
of the defendant firm, and there is a conflict in the evi-
dence upon this subject. The district court must have
found that it was borrowed for the benefit of the firm,
and, there being a conflict in the evidence, we can not,
under familiar rulings, disturb that finding of the
court.

II. Appellants' second contention is that the part-
nership contract between the defendants is unlike an
ordinary partnership, where the right of a partner to
borrow money for the partnership of necessity exists.
They insist that this was a partnership limited to a
single venture, namely, to invest the money furnished
by appellants in eggs during the summer, to be sold in
the winter of the year for which the partnership was
formed, and that only one investment and one sale
were contemplated in the contract. We can not con-
cur in this view of the contract. The amount expended
in erecting and fitting up the building, the amount to
be furnished by appellants, and the provision that the

contract was to continue for one year, and as much longer as the parties might agree, preclude the conclusion that the purchase and sale of a single lot of eggs was all that was contemplated. The provision in the contract that "when the stock is sold, so put down, the original investment shall be deducted, and the balance equally divided," does not determine the scope or duration of the partnership, but only the manner in which appellants were to be reimbursed, and the profits divided. The partnership contracted between the defendants was not for a single transaction, but for "the carrying on of the egg business in Ida Grove" for one year, and as much longer as the parties might agree. It was a partnership for a continuing business, and, in the absence of restrictions in the contract of copartnership, either partner might exercise the powers usually exercised by partners.

III. The contract provides that "for the purposes of carrying on the business the said Mrs. Alice Schleiter and Ressa Schleiter agree to furnish twenty-five thousand dollars, as needed in the business." No provision is made for obtaining money to be put into the business from any other source, and we think it is evident that no greater sum was to be put into it. The appellants insist that these provisions were a restriction upon the right of Rollins to borrow money on the credit of the firm to put into the business, and that appellees, knowing these provisions of the contract, must be held to have known that he had no authority to borrow the money for which the note in question was given on the credit of the firm or its members. In the view we take of the contract, we think it is entirely clear that, under it, Mr. Rollins did not have authority to borrow money to put into the business so long as appellants did not refuse to furnish it as they agreed. The only money to go into the business was that to be furnished by appellants, and no provision

was made for obtaining it from any other source. It is true that appellants only furnished twelve thousand, five hundred dollars to be put into the business. They allege and prove that at the time the last five thousand dollars was furnished to Rollins it was agreed that nothing additional should be put in. It is also true that appellees had no knowledge of this subsequent agreement, and that at the time Rollins borrowed the money he represented to them, as a reason for doing so, that appellants had failed to furnish the full amount agreed upon in the written contract. "As partners are bound by their own stipulations as between themselves, so all who deal with them are equally bound by them, if at the time of contracting or trading with the partnership they knew the nature of their agreement with each other." *Bromley v. Elliot*, 75 Am. Dec. 183. Appellees, knowing the stipulations of the contract, are bound by it; but, as already stated, they had no notice of the subsequent agreement alleged by appellants.

Under another familiar rule, it is not necessary that they should have been fully informed as to the agreements between the partners. "They will be equally bound, if they have been informed of facts that should have led a reasonably prudent and cautious man to make inquiry." 75 Am. Dec. *supra; Livingston v. Roosevelt*, 4 Am. Dec. 273. Knowing, as appellees did, that, under the written contract, appellants were to furnish all the money to be put into the business, it was certainly sufficient to put them upon inquiry to be told that appellants had failed to furnish the amount agreed upon,—an inquiry that would have discovered to them the subsequent agreement by which the amount to be furnished was reduced one half. If appellees had known of this subsequent agreement, they would not have been warranted in loaning the money to Rollins on the credit of the firm. While they did not know of

it, they did know, according to Rollins' statement to them, a fact that should have put them upon inquiry before loaning the money,—an inquiry that would have discovered to them that Rollins had no authority to borrow it on credit of the firm. Our conclusion is that the court should have held, as a matter of law, that Rollins had no authority to borrow the money on the credit of the partnership; that appellees, with their knowledge of the written agreement, were bound to take notice of that fact; and that information that appellants had failed to furnish the amount agreed upon did not authorize the loan on the credit of the firm, but was a statement which should have put appellees upon inquiry.

IV. The basis upon which appellants ask to recover upon their counterclaim is that the two thousand, seven hundred and sixty dollars derived from the sale of eggs was wrongfully deposited with appellees; that, under the contract, said proceeds should have been paid to them; and that appellees, knowing that fact, wrongfully retained said money, and refused to pay it to the appellants. This claim is made upon the theory that the partnership between the defendants was limited to a single transaction,—the purchase and sale of a single lot of eggs,—and that, upon the sale being made, appellants were entitled to the proceeds to the extent of their advancement. We have seen that such is not our construction of the contract. It was a continuing partnership, "to be carried on in the name of C. W. Rollins, he to attend to all the business, and have the general superintendency of the work." Rollins transacted partnership business through the plaintiff bank, making deposits therein, and paying for eggs purchased by checks thereon. While the proceeds of sales were to ultimately come to appellants to the extent of their advancements, it was not wrongful for Rollins to deposit such proceeds with the plaintiff bank. As the contract

required the business to be done in the name of C. W.
Rollins, the bank kept the account in that name, and
credited these proceeds to that account.   It is claimed
in argument that appellees should have shown what
disposition was made of this deposit, and that the evi-
dence shows that it was, in part, at least, applied to the
payment of the private indebtedness of Rollins.   This
branch of the case does not seem to have claimed the
attention that the other part did, and the evidence is
limited, and leaves it indefinite as to the disposition of
this two thousand, seven hundred and sixty dollars.   It
will be observed that appellants do not, in their coun-
terclaim, ask to recover because of a misappropriation
of this fund to the payment of private debts of Rollins,
but solely upon the ground that under the contract the
money belongs to them.   We think it can not be said'
that this money belonged to them, until there was a
settlement that would determine how much of it was
proceeds of sales after proper deductions, and that,
until this was done, it was money of the partnership.
If appellants relied upon a misappropriation of the
money to the payment of the individual debts of Rollins,
they should have so alleged.   We think there was no
error in dismissing appellants' counterclaim, but, for
the error already pointed out, we conclude that the
judgment of the district court must be REVERSED.