BAXTER, REED & COMPANY, Appellants, v. C. W. ROLLINS & COMPANY, et al.

**Partnership:** NOTICE AS TO POWERS OF PARTNER. The clause in a partnership agreement that the partners, other than the one instructed with the general superintendence and control of the business, shall furnish twenty-five thousand dollars for the purpose of carrying it on, does not prohibit the borrowing of money by him under all circumstances, but puts persons having knowledge of it, and of the fact that the money had not been furnished, on inquiry to ascertain his power to supply by borrowing. what had not been furnished and as to whether or not such other partners had refused to furnish the stipulated amount because of the subsequent modification of the agreement, or for other sufficient reason.

**Evidence:** CONFIRMATION: *Competency.* On the issue whether a partner had power to borrow in the firm name, he testified that he saw a letter written by the other partners to the borrowing one. The latter had no definite recollection of it, but gave it as his impression that he had received such a letter. It appeared that this letter could not be found. One Berry deposed that he was shown a letter by the borrowing partner purporting to be signed by the other, in which it was said that the latter could not furnish more money without sacrifice, and which requested the other to see whether he could borrow at the banks. The borrowing partner

testified that the letters which he showed Berry were genuine. Upon the objection that it was immaterial and incompetent, plaintiff was not allowed to give the contents of the letter which he saw, and the testimony of Berry was stricken out   *Held*, both rulings were erroneous and this testimony was corroborative of the evidence showing a power to borrow.

CONCLUSIONS. · A statement of partners that they did not authorize making of the notes in suit, executed in the partnership name by the managing partners, is in the nature of a conclusion, and does not show that they did not write a letter to him claimed to give him such authority.

SAME: *Preliminary Questions.* A preliminary question asked a member of a firm as to whether another member at any time wrote to or instructed him to do anything in regard to borrowing money is not obnoxious to the objection that it calls for secondary evidence and the opinion and conclusion of a witness.

INCOMPETENCY AND IRRELEVANCY. On the issue whether a partner had power to borrow on the credit of the firm, a question which asks a member of a firm as to what, if anything, another member at any time said to him on the subject of borrowing money, is not vulnerable to an objection that it is inadmissible under the pleadings, and incompetent, irrelevant and immaterial.

**Appeal:** REVERSAL AND REMAND: *Second appeal.* A holding on appeal in a law action, that a certain agreement is proven, is not conclusive on a second appeal; the question of whether it is proven must be determined from the evidence taken on the second trial.

*Appeal from Ida District Court.*—HON. CHARLES D. GOLDSMITH, Judge.

FRIDAY, OCTOBER 16, 1896.

ACTION at law to recover an amount alleged to be due on a promissory note.   There was a trial on the merits, and a verdict for the defendants by order of the court.   From the judgment rendered on the verdict, the plaintiffs appeal.—*Reversed.*

*Warren & Johnston, Homer S. Bradshaw,* and *J. S. Lothrop* for appellants.

*Storey & Gaines* for appellees.

ROBINSON, J.—This action is founded on a promissory note for the sum of three thousand dollars, given on the twenty-eighth day of May, 1890, payable on the first day of the next December, and signed "C. W. Rollins & Co." The defendants named are C. W. Rollins & Co., C. W. Rollins, Alice Schleiter, and Ressa Schleiter. The petition alleges that when the note was given, the defendants were a co-partnership engaged in buying, preserving and shipping eggs; that the business was carried on at Ida Grove, under the control and management of the defendant, Rollins; and that the note was given for a loan of three thousand dollars, made at the special instance and request of Rollins for the use of the firm. Rollins did not answer, but made default. We do not understand that any answer was filed by C. W. Rollins & Co. The other defendants united in an answer which contained a general denial. The answer admits that the appellees had a business relation with Rollins, which was limited to one year, but avers that he had no authority to borrow money, or make notes as security therefor, nor to pledge the credit of the appellees, nor to use their name, nor the name of the firm, or the credit of the business, for the purpose of borrowing money; that the appellees were to furnish money, and not credit; and that the plaintiffs were fully advised of the fact that Rollins did not have authority as stated. The answer further alleges that the business in which the appellees were interested was conducted by Rollins under an agreement in writing, of which the following is a copy: "This article of agreement, entered into this 8th day of October, 1889, between C. W. Rollins, Mrs. Alice Schleiter, and Miss Ressa Schleiter, witnesseth, that the parties hereto have entered into a partnership for the purpose of carrying on the egg business in Ida Grove, Iowa, preserving eggs with Judd's egg

preserving compound, the business to be carried on in the name of C. W. Rollins, he to attend to all business and to have the general superintendency of the work that the parties hereto shall put up at once, or as soon as possible, an egg house in said Ida Grove, to be not less than fifty by one hundred feet, two stories high, and basement, and, for the purpose of carrying on the business the said Mrs. Alice Schleiter and Ressa Schleiter, agree to furnish twenty-five thousand dollars, as needed in the business, and, out of that amount, money shall be used, as much as is needed, to erect said building, and in the spring said C. W. Rollins shall replace in said fund the one-half of what the building has cost. The said C. W. Rollins is to make no charge for his services; but when the stock is sold, so put down, the original investment shall be deducted, and the balance equally divided, C. W. Rollins to have one-half, and the other parties one-half, and any stock or material on hand shall in the same manner be owned equally, C. W. Rollins one-half, and the other parties one-half; said contract to continue for one year, and as much longer as parties may mutually desire to continue the business.    C. W. Rollins. Alice Schleiter.    Ressa Schleiter." The answer further states that during the month of April, 1890, Rollins and the appellees orally agreed that they would put down only two car loads of eggs, and that all the money needed in said business, in addition to what had already been furnished, would be such as was necessary for that purpose; that the appellees at that time furnished five thousand dollars, which was all the money the parties agreed at that time was necessary for that year; and that the contract was never extended more than the one year agreed upon. The contract, as originally made, was construed on a former appeal in this case.    90 Iowa, 222 (57 N. W. Rep. 838).

I.   The appellees furnished to Rollins only twelve thousand five hundred dollars.   It is claimed by the appellants that the evidence does not show a change in the agreement to reduce the amount of money which should be furnished by the appellees, and that, as they furnished only one-half of the sum required by the agreement, Rollins was authorized to borrow the amount in controversy, and bind the appellees by the note in suit.   In response to that claim the appellees insist that it was decided adversely to the appellant on the former appeal, but we do not concur in that view.   It was stated by this court on that appeal that it was alleged and proven that, when the last five thousand dollars were furnished Rollins, it was agreed that nothing additional should be put in, but what was thus said was based upon the record then submitted to us.   The cause was not triable *de novo* in this court, and when it was remanded for a new trial the issue as to the subsequent agreement, like other issues of fact, was triable anew, and we are to determine the various questions argued, from the record of the last trial.   Both the appellees testify positively that, after the agreement we have set out was made, a verbal one was entered into, by which the amount they were to invest in the business was limited to twelve thousand five hundred dollars, but they do not agree when it was done.   Mrs. Schleiter testifies that it was in February, 1891; and her daughter that it was in the following April.   Rollins states that a new agreement was talked of, and that the appellees paid him five thousand dollars under a new arrangement, by which they were to furnish ten thousand dollars, with the proviso that if they could not procure the last half, he should borrow it.   He further states that he drew a new agreement to carry into effect that arrangement, and that it was never signed; that in the latter part of April, 1891, Miss Schleiter

visited Ida Grove, and told him that she and her mother had decided not to advance any more money in the business; that he told her that was all right, so far as he was concerned, and that he would do the best he could with what they had, and that he told her they would work under the old contract. He further states that the money in question was borrowed under that contract. The testimony of Rollins is in some respects indefinite and unsatisfactory, but we are of the opinion that it was sufficient to require that the issue in regard to the subsequent agreement be submitted to the jury.

II. It is said, that the agreement which we have set out did not authorize Rollins to borrow money. It is true, that such authority was not given in terms, but Rollins had the powers which a partner intrusted with the general superintendence and control of the partnership business would have, excepting as limited by agreement. The writing which we have set out did not limit the power of Rollins to obtain money for the use of the firm, excepting as a limitation may be inferred from the clause which required the appellees to furnish twenty-five thousand dollars for the purpose of carrying on the business. That clause did not prohibit the borrowing of money by Rollins under all circumstances, but put persons having knowledge of it, and of the fact that the money for which it provided had not been furnished, upon inquiry to ascertain the power of Rollins to supply by borrowing what had not been furnished. If the appellees had refused to furnish the stipulated amount of money, because of a subsequent modification of the agreement, or for other sufficient reason, Rollins had no power to make them responsible by borrowing it of persons chargeable with knowledge of the facts. This is the substance and effect of what was held on

this branch of the case on the former appeal, and that holding is final in this case.

III. Rollins was asked whether Mrs. Schleiter at any time wrote to, or instructed him, to do anything in regard to borrowing money. The question was objected to as calling for secondary evidence, and the opinion or conclusion of the witness, and as incompetent, irrelevant, and immaterial. The objection was sustained. The question was of a preliminary character, and an answer should have been permitted. The witness was then asked, "What, if anything, did Mrs. Schleiter at any time say to you on the subject of borrowing money?" This was objected to as not admissible under the pleadings, and incompetens, irrelevant, and immaterial. It might have been more specific, but it related to an important matter in issue, and was not vulnerable to the objections made. Mr. Reed, of Baxter, Reed & Co., testified that, before lending the money and taking the note in controversy, he saw the original agreement which the defendants entered into, and, at the same time, a letter from Mrs. Schleiter. It was then shown that the letter could not be found. Rollins had no definite recollection in regard to it, and could not state that he had ever received it, but his impression was that he had. Reed was then recalled, and stated that the letter purported to be signed by Mrs. Alice Schleiter; that he had been in the banking business twelve years, and supposed himself to be capable of determining the genuineness of signatures; that he had compared the signature to the letter with that of Mrs. Schleiter to the agreemant; and that they were made by the same person. He was then asked to state what there was in the letter upon the subject of borrowing money, but an objection to the question was sustained. The deposition of L. A. Berry was offered in evidence by the

plaintiffs. He stated that, in the spring or early in the summer of the year 1890, Rollins handed him his con-tract with the appellees, and a letter purporting to have been written to Rollins by Mrs. Schleiter, and that he examined it; that he was unable to state the exact language of the letter, but that he remembered two paragraphs, which were, in effect, that the writer could not furnish more money at that time without being compelled to make a sacrifice, and that she requested Mr. Rollins to ascertain if he could not borrow of one of the Ida Grove banks the money which was necessary to carry on the business. Rollins testified that the letters which he showed Berry were genuine letters of Mrs. Schleiter. The defendants afterwards moved to strike from the record the depo-sition of Berry, on the ground that it was incompe-tent, immaterial and irrelevant, and the motion was sustained. It is our opinion that the testimony of Reed and Berry with respect to the contents of the letter should have been received. If it contained what is claimed for it, then it tended to show that Rollins was authorized to borrow money to carry on the busi-ness, and hence to prove that the note in suit was made by authority. We do not think that Berry's answer alone would show that such was the case, for the reason that a request that Rollins ascertain if he could borrow money would not necessarily empower him to borrow it on the credit of the person who made the request, but it might corroborate other evidence to show that such power was conferred. The rulings of the court upon the admission of evidence which was designed to show that authority to effect a loan for the defendants was given to Rollins orally or by letter, or both, appear to have been based upon the theory that such evidence was immaterial and irrelevant or incompetent. It is said that the existence of the letter to which Reed and Berry referred was a matter of

dispute, and, therefore, that proof of its alleged contents should not have been admitted. Of course, the fact that it was once in existence must be shown, before any weight can be given to its alleged contents, but we do not understand that the claim that it was written is denied. The appellees have not testified in regard to it. It is true, they state that they never authorized the making of the note in suit, but that is in the nature of a conclusion, and does not show that the letter was not written. The testimony of Rollins with respect to it is of no value, excepting as his statements tend to show that, if Reed and Berry saw the letter about which they testify, it was genuine. There was sufficient evidence as to the existence of the letter to authorize proof of its contents to go to the jury. For the errors pointed out, the judgment of the district court is REVERSED.