GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v.
W. D. COLLINS.

Decided December 17, 1902.

**1.—Evidence—Admissibility—Objection.**

Complaint of the admission of evidence over objection thereto is unavailing where other evidence to the same effect was admitted without objection.

**2.—Same—Conclusion of Witness.**

The question, "Is it not a fact that when the engineer who brought the engine in has made his report, and the engine inspector has made his inspection, that the engineers customarily assume that there are no defects and the engine is ready for duty?" calls for a fact, and not a mere conclusion.

**3.—Charge—Damages—Use of "Should Allow."**

A charge to the effect that the jury should take into consideration the mental and physical pain suffered by plaintiff, and should allow such sum as would be just compensation therefor, was not objectionable because of the use of the word "should."

**4.—Railroads—Evidence—Negligence—Side Rod of Engine.**

Evidence held sufficient to show that a side rod of an engine broke because of an old crack and of crystallization, which should have been discovered by proper inspection.

**5.—Same—Inspection—Waiver of Rule—Contributory Negligence.**

Failure of an engineer to inspect his engine for defects before starting on a run is not negligence where this is the general practice of engineers on that road, and the rule requiring them to make such inspection is generally if not universally disregarded.

**6.—Bill of Exceptions—Disallowance.**

Where the judge indorsed on a bill of exceptions that he had presented it to the opposing counsel, who refused to agree to it, and that the bill "is by me disallowed because incorrect," this showed that the bill was disallowed not merely because of such refusal, but because it was incorrect.

**7.—Railroads—Negligence—Inspection of Engine.**

Where there was evidence to the effect that the side rod of an engine, the breaking of which caused the injury, had became crystallized from long use, and that such a defect was discoverable by the use of a hydraulic press, and that no such test had ever been applied to this rod, it was proper for the jury to consider such evidence in determining a failure to make a proper inspection.

**8.—Personal Injury—Damages—Inability to Perform Family Duty.**

Where plaintiff testified that one effect of his injuries was an inability to perform family duty, and a physician testified that such injuries as plaintiff had received impaired that capacity, there was a legal basis for the estimation of damages on that ground.

Appeal from the District Court of Bexar. Tried below before Hon. S. J. Brooks.

*Newton & Ward* and *Baker, Botts, Baker & Lovett,* for appellant.

*Perry J. Lewis* and *H. C. Carter,* for appellee.

JAMES, CHIEF JUSTICE.—The injury for which appellee sues was alleged to have been received on or about April 1, 1900, while in the employ of appellant in the capacity of an engineer, and occasioned by

the breaking of a side rod of his engine while the train was running, said broken rod crashing into the cab where plaintiff was sitting. The negligence alleged was in permitting the rod to become weak, cracked, defective, brittle, and crystallized, and in the failure to properly inspect it. Defendant pleaded a general denial; also that it had exercised proper care through competent inspectors as to inspection of the engine; that defects, if any, in the rod were not discoverable by the exercise of ordinary care,—in other words, were latent; and that it had exercised proper care in procuring the engine from reputable manufacturers; that it was the duty of appellee under defendant's rules to have inspected the engine and discovered any defect in the engine that was discoverable by ordinary care, and that the rod broke from appellee's negligence in handling the engine. The verdict was against appellant for $15,000.

The assignments from 1 to 7 inclusive object to the following cross-question to many witnesses, upon the ground that it called for the mere conclusion of a witness: "Is it not a fact that when the engineer who brought the engine in has made his report, and the engine inspector that the defendant is supposed to have at the ends of divisions has inspected the engine, that engineers customarily assume that there are no defects and the engine is ready for duty?" The answer was in the affirmative. In our opinion it embodied a fact, and not a mere conclusion. But outside of this, the same cross-interrogatory was put to other witnesses than those referred to in these seven assignments, and the same answer elicited, without any objection interposed. Railway v. John, 29 S. W. Rep., 558; Railway v. Kindred, 57 Texas, 491.

The eighth assignment criticises the following part of a charge: "And in estimating his damages, if any, you should take into consideration the mental and physical pain suffered, if any, consequent upon his injuries, if any; and if you believe from the evidence that his injuries, if any, are permanent and will diminish his capacity to earn money in the future, then you should allow him such a sum therefor as you believe from the evidence," etc, because of the use of the word "should" where it first occurs in the paragraph. The word is used twice in the paragraph, and if error at one place, it would seem to be equally so at the other. If facts are found as indicated, there can be no question that a jury should consider the elements of damage indicated, if found to exist, The assignment is therefore overruled.

Before discussing the remaining assignments, a statement of conclusions of fact in view of the issues and verdict will be given as briefly as may be.

It was an engine which started at Del Rio for San Antonio, the beginning and end of a division. About twenty miles west of San Antonio the rod on the right side of the engine—the engineer's side—suddenly broke about the middle, and struck into the box with great force and caused plaintiff's injury. Plaintiff testified that he examined the rod when the train stopped, and that on the bottom side of the rod where it broke there was a crack clear across the rod, an old crack, which the oil

had worked up into. The crack was about an eighth of an inch deep across the bottom of the rod. Another witness, O'Day, testified that he saw the engine when it came into the yards at San Antonio; that the rod was broken about the center; that he noticed this crack which the oil had gotten into at the place where the rod was broken. An engineer, Fitzpatrick, who ran this engine the day before the accident between Del Rio and Sanderson, testified that when he got back to Del Rio he looked her over as he always did at the end of a trip,—he looked the rods over and did not discover any cracks or defects in either one of the side rods, and if there had been a crack in the side rod an eighth of an inch deep, it would have been visible, and he would have seen it.

Snedden, defendant's machinist and foreman at Del Rio, who it appears inspected the engine before it started out on this occasion, testified that he gave it the usual inspection, and that this usually takes from fifteen minutes to half an hour. Other witnesses testified that it took an hour or more to inspect an engine properly. Snedden testified also that if a side rod had a crack on the under side an eighth of an inch deep, it would show on the corners and outer edges of the rod, and if there had been such a crack in this one, it would not have been necessary to get underneath it to see it. The rod is about six inches wide and about three and a half inches across. If there was a crack on the bottom of that rod, it ought to show on the edge. If it was just half way across the rod and didn't extend to the outside at all so as to show up, it would not be indicated, and practically you would not find it until the rod broke. When it snaps off when the engine is running, then it is crystallized. Anderson, a witness for defendant, testified that when a side rod becomes crystallized it shows from the outside, and the engine inspector can discover it; and that he could take the two ends of a rod and look at the broken ends and tell whether or not the metal had crystallized,—the one that is crystallized shows cracks and the other does not. If the rod was not crystallized, and broke, the break would be a kind of a tear; the other would be more like glass. O'Day testified that the other break (outside of the crack which the oil had gone into) was bright, where it broke right off. It was a straight-off break.

Snedden testified also that these cracks always show up before any accident happens. The crack can be discovered before the accident happens,—that crystallization is where the metal by reason of long use and exposure to the elements of heat and cold loses its fiber and is in a condition where it will break easily.

Arthur M. White, superintendent of the Schenectady Locomotive Works, testified that where there is a fracture an inspection may show that the rod was crystallized at the point of fracture, though a fracture may have been occasioned by some other cause than the fact of the crystallization of the rod at that particular point. If there is any suspicion that a side rod has lost its temper, I consider the thing to do is to replace it with a new one.

Arthur Lane, another witness. connected with said works, testified

that constant use and exposure to heat and cold will tend to crystallize the metal, and make them more liable to break than they would have been in their original perfect condition; he also testified that he knew of no physical test which should be "appointed" to a side rod to ascertain whether it is strong and in good condition other than a close and periodic inspection of its surface to ascertain whether any cracks are developing in it. There was evidence tending to show that this engine had been in use by defendant for about eight years, and that after such use an engine is apt to become crystallized.

We think it is unnecessary to go further into the mass of testimony, incorporated in this record, to enable us to say that there was evidence that a crack one-eighth of an inch existed clear across the bottom of the rod, and was an old crack; that this defect was discoverable upon an ordinarily careful inspection; that it indicated crystallization; that the inspection just before the train left the roundhouse at Del Rio, which did not discover the break was insufficient, and not the exercise of ordinary care; that the rod broke where it had been cracked, by reason of the crack and crystallization, and inflicted the injury for which suit is brought.

These conclusions from the evidence dispose of the thirteenth, fifteenth, eighteenth, and nineteenth assignments of error.

The fourteenth assignment is that the undisputed testimony showed that according to the rules of defendant, it was the duty of plaintiff to inspect the engine before leaving Del Rio, and he failed to do so, and therefore he was guilty of contributory negligence. It is not necessary on this question to say more than that the evidence showed it was the general if not universal practice of defendant's engineers to make no inspection on starting out on a run. If the rules bear the construction contended for by appellant, the testimony abundantly discloses that such rule was not enforced or insisted on by defendant in practice, and that it had become the custom of its engineers to rely on the sufficiency of the inspection just made in the roundhouse.

The sixteenth assignment is that the undisputed evidence is that plaintiff's injury was the result of an unavoidable accident, and was a risk incident to his employment. This seems to be sufficiently covered by what has already been stated.

The twentieth assignment complains of the failure of the court to prepare and file a bill of exceptions, where such a bill was presented to the court by appellant's counsel and by him indorsed over the judge's signature: "Presented this 3d day of April, 1902, and by me presented to counsel for plaintiff, who refused to agree to same, and the bill is by me disallowed because incorrect." It can not be charged that the judge refused the bill simply because opposing counsel refused to agree to it. The ground of the refusal, plainly stated, was that the bill was incorrect. We must presume, in the absence of any further matter of record on the subject, that the alleged improper argument of plaintiff's counsel was not in fact indulged in.

We now come to appellant's assignments respecting the charges. The refused charge referred to in the twelfth assignment was properly refused in view of the second special charge asked by appellant, which the court incorporated into the main charge.

The eleventh assignment is that a requested charge should have been given which would peremptorily have told the jury to find for defendant, if plaintiff failed to inspect the engine and side rods after the same was put in his charge, and before he went out on the road with it. As the undisputed evidence showed that he did not then inspect it, this was an absolutely peremptory charge for defendant. We think we need not make a construction of the rules to ascertain whether or not the rule invoked by plaintiff intended to impose such duty of inspection upon him at the beginning of each trip, because, as we have already stated, there was evidence (and practically· undisputed) showing that if such was the sense and requirement of the rule, it was not enforced by defendant, but the custom of its engineers generally was not to make an inspection before starting out. In such a case a rule amounts to no rule, and it would, under the testimony here, have been error for the court to assume that such a rule was in effect.

The ninth assignment involves this requested charge: "There is some testimony before you tending to prove that the defect of crystallization of a side rod might be discovered by putting the side rod in a press. As the plaintiff has not alleged in his petition, nor has he proven, that it was the duty of defendant to have subjected said side rod to such a test, you will not consider said testimony in making up your verdict, but will altogether disregard same." The proposition which appellant makes under this assignment is that while some of the testimony tended to show that the defect of crystallization of a side rod could be discovered by subjecting the rods to a hydraulic press, it was also shown that to do this every time an engine was sent out on a trip, the company would have to have two million engines to enable it to operate its lines, which was manifestly impracticable, and for this reason the jury ought to have been charged as requested to discard such test altogether.

The charge was properly refused. It appears from evidence that when the defect of crystallization is not indicated by cracks (and there was evidence that the rod was not cracked), the method of ascertaining its presence was by placing the rod in a press; if the rod breaks under pressure, it is crystallized; if not it is sound. If this be so, then from the further evidence that this rod appears to have been in use for about eight years, and that after such period of use a side rod is apt to become crystallized, and it does not appear that any such test had ever been used in respect to this rod, it became a question for the jury whether or not it was, under the circumstances, the exercises of reasonable care to have never subjected it to such test. While perhaps no one would say that ordinary care would have required this test to be repeated each time the engine was taken out, it might be said that under the circumstances shown, ordinary care required such test of this rod at reasonable intervals.

The tenth assignment complains of the refusal of a charge to disregard plaintiff's testimony that he was now unable to perform family duty, because such testimony does not contribute any legal basis for the estimation of damages, and because plaintiff has not shown that such disability was the result of this accident, or that previously he was not in the same condition, or that the loss of that power had occasioned any mental pain or suffering. Plaintiff testified that this condition was the effect of his injuries. Dr. Caffery testified that such injuries as plaintiff's impaired this capacity. Appellant cites nothing which holds that such a disability may not be considered in estimating damages. We overrule the assignment.

We have examined the testimony in connection with the assignment that the verdict is excessive, and believe that it fairly warrants a judgment for the amount recovered.

*Affirmed.*

Writ of error refused.