**DAYLE L. SMITH OIL CO. et al. v. CONTINENTAL SUPPLY CO.   (No. 7233.) ***

(Court of Civil Appeals of Texas.   San Antonio.   Dec. 17, 1924.   Rehearing Denied Jan. 28, 1925.)

**1. Joint-stock companies and business trusts ⬤⟞15(1)—Seller taking association's note with knowledge of shareholders' exemption from personal liability relegated to firm's assets.**

Seller taking note of association, with knowledge of exemption of shareholders from individual liability by declaration of trust, in reliance on association's apparent financial status and business prospects, *held* relegated to association's assets and funds for payment of obligations.

**2. Joint-stock companies and business trusts ⬤⟞1—Concerns operating under declaration of trust, trust agreement, etc., are "partnerships" of which shareholders are constituent members.**

Concerns operating under declaration of trust or trust agreement, as common-law trust or Massachusetts trust, etc., are partnerships, of which shareholders are constituent members; controlling fact being that under terms of trust they do not surrender to trustee, but retain ultimate control of association's properties and business.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Partnership.]

**3. Joint-stock companies and business trusts ⬤⟞15(1)—Persons extending credit to trust with knowledge of agreements, limiting or excluding personal liabilities, bound thereby.**

Persons extending credit to partnerships, with knowledge of special agreements among partners, regulating, limiting, or excluding their respective liabilities on firm obligations, are bound by such stipulations as are partners themselves, and this is true, particularly in the case of a business trust, where credit is extended on apparent financial status and its business prospects, rather than on belief or assumption that shareholders are personally liable.

Appeal from District Court, Hidalgo County; L. J. Polk, Judge.

Action by the Continental Supply Company against the Dayle L. Smith Oil Company and others.   Judgment for plaintiff, and defendants appeal.   Reversed and remanded.

J. E. Leslie, of McAllen, W. L. Dawson and H. F. Bishop, both of Mission, and Huggins, Kayser & Liddell, of Houston, for appellants.

Bryan, Williams & Cave, of St. Louis, Mo., McDaniels & Bounds, of McAllen, and Edward H. Bailey, of Houston, for appellee.

SMITH, J.   This appeal is from a judgment in favor of the Continental Supply Company against the Oil Company and others for the amount of a note given by the Oil Company to cover the purchase price of certain oil well material, and foreclosing a mortgage lien upon such material.   The Oil Company, which was in effect a joint-stock association, sought to defeat the payment of the note by setting up failure of consideration based upon the contention that a part of the material was defective and fell short of the warranty under which it was purchased.   The oil association also filed a cross-action, alleging that the Supply Company warranted the quality of the material, but that the latter was defective, and the warranty was breached, resulting in special damages, for which the association sought judgment.   The cause was tried without a jury, and the court rendered judgment against the association on its cross-action and in favor of the Supply Company for the amount of the note and for foreclosure.   This judgment was based on the court's findings that the Supply Company did not warrant the material, and that said material "was good, first-class steel upset drill stem, possessing all the qualities and materials called for in standard specifications for such pipe, and not defective by reason of quality or material."

Primarily, the case is essentially one of fact, and it is so conceded by the parties.   Appellants contend that the uncontroverted testimony, or at least the overwhelming preponderance thereof, showed that the material was wholly unfit in quality to serve the purposes for which it was sold.   We have gone to great pains to analyze and weigh the evidence presented in the record, upon this and related issues, and have been unable to escape the conviction that as to at least a part of the material in question the overwhelming preponderance of the testimony supports appellants' contention that such material was defective and fell short of the warranty, which was necessarily implied from the sale thereof, if not given in express terms.   This conviction may not be of sufficient force to require a reversal of the judgment on that account alone, or if that were the only question in the case, but as the judgment must be reversed upon another question as to some of the parties, we have concluded that the ends of justice will be more nearly met by remanding the whole cause for another trial.

[1] The Dayle L. Smith Oil Company was an association of persons operating under a so-called trust agreement, which contained this stipulation:

"The trustees shall have no power to bind the shareholders personally, except for the stock subscribed by them and the subscribers and their assigns and all persons and corporations extending credit to, contracting with,

---

⬤⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused March 24, 1925.

or having any claim against the trustees shall look only to the funds and property of the trust estate for payment under such contract or claim, or for the payment of any debt, or damage, judgment or decree, or any money that may otherwise become, due or payable to them from the trustees so that neither the trustees, shareholders nor president, present or future, shall be personally liable therefor, and all contracts shall be in writing and contain provisions for this limitation."

The negotiations for the purchase of the material from the Supply Company were conducted by Dayle L. Smith in behalf of the association, and the note sued on was signed "Dayle L. Smith Oil Company, by Dayle L. Smith, President," and not otherwise. The note did not describe the association otherwise than by its trade-name, nor did it contain any restrictions against the personal liability of the individual shareholders. It was simply a plain note of hand, signed as indicated. Subsequently, and over the same signature, the president of the association executed and delivered to the Supply Company a chattel mortgage covering the material purchased, as well as other material owned by the association, to secure the payment of the note. The facts and circumstances attending the purchase of the material and the making of the note and mortgage become important, and, we think, controlling, and for that reason we will here set them out at some length, assuming, for the purpose of applying the law thereto, that they are true.

The president of the oil association first endeavored to purchase the desired material from the Supply Company through the latter's agent at Houston, but, after some negotiation to that end, failed. She then went to the Supply Company's domicile, in St. Louis, Mo., and there took up negotiations with the vice president and general manager of the company. The latter was shown the hereinabove quoted provision. The two officials of the respective concerns had numerous conferences leading up to and resulting in the deal finally consummated between them. At first the Supply Company's manager refused to make the sale on credit, but finally agreed to do so, not upon the credit or possible liability or responsibility of the shareholders of the oil concern, but because of the assets and prospects of the association as such. Upon this point the Supply Company's official testified that:

"I told her that we would be glad to sell to her if suitable financial arrangements could be made. She finally called upon me on September 19th, and represented that she was having considerable success in selling stock in St. Louis, and that in addition recent development made it appear that she would in the very near future without doubt be able to dispose of a part of her company's acreage, and would have plenty of finances to take care of her purchases. For this reason I consented to take her order. * * *"

The evidence further shows that the sale was made upon a 90-day open account, that when default was made in the payment of the account the Supply Company took the matter up with the president of the association, and after some delay the parties settled it by the execution, delivery, and acceptance of the note and mortgage here sued on. At no time prior to bringing this suit did the Supply Company demand payment from any of the individual shareholders, or indicate that it regarded them, or either of them, as liable for the debt, or that it had extended the credit upon any consideration other than the assets and prospects of the association.

The Supply Company brought this action, not only against the partnership under its trade-name, but against the individual shareholders, including Dayle L. Smith, D. G. Wood, A. Ledbetter, M. J. Bowe, and W. R. Jackson. The judgment was rendered jointly and severally against all the defendants, of whom Wood, Ledbetter, Bowe, and Jackson have together prosecuted a separate appeal and filed a separate brief from that of the association and appellant Dayle L. Smith. They take the position that, although under the decisions they were partners with each other and all the other shareholders, yet they are not individually liable here, because in the declaration of trust under which the association was operating the shareholders were expressly exempt from individual liability upon obligations incurred by the company as such, and the Supply Company knew of such exemption and of the exclusion of the power of the operating officials to bind them, and with such knowledge in mind took the firm's obligation, whereby it was relegated to the latter's assets and fund for payment of those obligations. We have reached the firm conclusion that this contention as to the law should be sustained, if the facts asserted are found by the court or jury to exist.

[2] The appellant association, as has been shown, is what is popularly designated variously as a "declaration of trust," "common-law trust," "Massachusetts trust," "Trust agreement," and the like, but by whatever name they may be designated such concerns as the evidence shows this one to be have been placed by numerous decisions of the Courts of Civil Appeals of this state in the category of partnerships, of which the shareholders are constituent members'; the controlling fact being that under the terms of the trust the shareholders do not surrender to the trustees, but retain ultimate control of the association's property and business. Industrial Lumber Co. v. Ass'n, 31 Tex. Civ. App. 75, 72 S. W. 875; McCamey v. Oil Co., 241 S. W. 689; Howe v. Bank & Trust Co., 242 S. W. 1091; Dee v. Taylor, etc., 227 S.

W. 361; Wells v. Tel. Co., 239 S. W. 1001; Oil Co. v. McDorman, 244 S. W. 167; Hardee v. Adams Ass'n, 254 S. W. 602.

[3] It is a familiar general rule that, although partners are bound by special agreements among themselves, regulating, limiting, or excluding their respective liabilities upon firm obligations, others dealing with ·them are not so bound; such is the general rule.

But it seems now to be settled, and certainly upon sound reason, that others are also bound by such stipulations in cases where they have knowledge thereof, and extend credit to the firm in the very face of such knowledge. 20 R. C. L. p. 887, § 98; Baxter v. Rollins, 90 Iowa, 217, 57 N. W. 838, 48 Am. St. Rep. 432; McCarthy v. Parker, 243 Mass. 465, 138 N. E. 8; Oden v. Bone (Tex. Civ. App.) 263 S. W. 640.

This is particularly true, or should be, where, as in this case, the credit is extended upon the apparent financial status and prospects of the business of the partnership, as such, and not upon any belief or assumption that the shareholders would be personally liable. Here it is apparent that none of the creditor or debtor parties believed or assumed that the shareholders would be liable as individual members of the partnership, and that the Supply Company's assertion of its claim against them was induced by an afterthought, occurring, for the first time, after the firm defaulted. The rule applicable in this cause cannot be better stated than by quoting from the opinion of Chief Justice Fly in the case of Oden v. Bone, 263 S. W. 640:

"Appellant lent money to the Southern Oil & Grease Company and took the two notes for the same. He admitted that he was the manager of the company from August 12· to February 1, 1922. His attorney saw and thoroughly examined the declaration of trust before the money was loaned by appellant, and he was acquainted with the contents of the declaration of trust. Before the notes were executed Cofer exhibited to appellant a copy of the declaration of trust of the Southern Oil & Grease Company, and he knew that the declaration provided that the `shareholders and trustees were not personally liable for the debts of the company. Appellant did not rely upon the liabilty of the shareholders or trustees when he made the loan. He read the declaration of trust and understood its provisions, and admitted that the shareholders were not liable. Appellant was the manager of the company, and as such was charged with knowledge of the contents of the declaration of trust. He knew the shareholders were not liable and shifted his position only when the company became insolvent. The shareholders nor trustees were liable personally."

Of course upon another trial the facts upon which the foregoing conclusions of law are based should be ascertained from the evidence by court or jury, as the case may be, and such issues should be submitted and considered along with the issues as to warranty, the breach thereof, the quality , of the material, the special damages, and such other material issues of fact as may arise.

The judgment is ̄reversed and the cause remanded, for another trial.