## McVEY v. UNITED TIMBER & KAOLIN ASS'N et al. (No. 7301.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 18, 1925. Rehearing Denied March 18, 1925.)

1. Mortgages ⚖➚171(5)—Records of deeds of trust held notice as to timber as well as land rights.

Record of deeds of trust conveying timber rights consisting of conveyances of timber, with right to remove same within 15 years, was notice as to timber rights as well as land rights, part of deeds of trust relating to timber not having character of chattel mortgages.

2. Deeds ⚖➚117—Growing timber passes with conveyance of land.

Growing trees are part of the soil, and when land is conveyed, timber goes with the title.

3. Logs and logging ⚖➚3(2) — Registration laws applying to land apply to timber.

Timber on land may be sold, with or without conditions of removal, but so long as it is attached to soil, it is part of land, and laws of registration applying to land apply to timber growing thereon.

4. Frauds, statute of ⚖➚56(3)—Sale of growing timber sale of "interest in land."

Sale of timber growing on land is sale of interest in land within statute of frauds.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interest (on, Property).]

5. Chattel mortgages ⚖➚153 — Claims under subsequent mortgages accruing in good faith take precedence of claim under prior unrecorded chattel mortgage.

Where plaintiff's mortgage on standing timber, even if a chattel mortgage as alleged, was not deposited and filed forthwith as required by Rev. St. art. 5655, but was held for more than a year before it was recorded, claims under mortgages of timber, which subsequently accrued in good faith, would take precedence over claim of plaintiff.

6. Mortgages ⚖➚174 — Unrecorded mortgage void as to subsequent mortgagees without notice.

Where attorney for timber association knew that others were being solicited and were contemplating loans to association, and did make loans secured by mortgages on timber, but at no time apprised mortgagees that he had unrecorded mortgage on timber, his mortgage was void as to subsequent mortgagees without notice actual or constructive.

7. Joint-stock companies and business trusts ⚖➚15(1)—Mortgagee having agreed no personal liability should attach to trustees or certificate holders held not entitled to judgment against them on association's note.

Where attorney at law prepared common-law trust agreement exempting trustees and holders of certificates from personal liability on liability of joint-stock association, and in association's note to him secured by deed of trust it was stipulated that trustees should not be personally liable, he was not entitled to judgment against trustees or certificate holders.

On Motion for Rehearing.

8. Mortgages ⚖➚186(5)—Evidence held not to show that subsequent mortgagees of standing timber had knowledge of unrecorded mortgage.

Evidence *held* not to show that subsequent mortgagees of timber had notice of plaintiff's lien thereon secured by unrecorded mortgage.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by E. H. McVey against the United Timber & Kaolin Association and others. From judgment subjecting plaintiff's lien to other liens, he appeals. Affirmed.

Gaines, Quin, Harley & Gaines, of San Antonio, for appellant.

Boyle, Ezell & Grover, Will A. Morriss, Eall & Seeligson, and C. W. Trueheart, all of San Antonio, for appellees.

FLY, C. J. This is a suit brought by appellant against the United Timber & Kaolin Association, C. Endsley, Homer Rogers, James F. Halpin, J. Warren Halpin, W. D. Love, W. A. Morris, and W. A. Thomas, as trustees for the association, named a common-law trust, joint-stock association, or copartnership, and E. Endsley, Homer Rogers, James F. Halpin, J. Warren Halpin, W. D. Love, William A. Morris, W. A. Thomson, and Harry Rogers to obtain a judgment against the parties named, jointly and severally, for his debt evidenced by a note for $9,-916.35, with interest at 7 per cent. per annum and attorney's fees, and to declare the mortgages and deeds of trust described in the petition null and void so far as his debt was concerned, and for the foreclosure of a lien claimed by him on the property of the association. The court heard the suit without a jury, and rendered judgment on the note in favor of appellant as against the United Timber & Kaolin Association, and for a foreclosure of a lien on certain described property of said association, subject and secon-

---

⚖➚For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

dary to a lien in favor of Harry H. Rogers for $400,000, as evidenced by a deed of trust of July 29, 1920, and to a lien evidenced by a deed of trust, of date July 1, 1920, for $200,-000, in favor of Halpin and subject and inferior to a lien evidenced by a deed of trust in favor of Harry H. Rogers in the sum of $210,000. The court also foreclosed a lien in favor of appellant upon all the capital stock, certificates and shares thereof of the Uvalde & Northern Railway Company, except twelve shares not owned by the association, this lien, however, being secondary to a lien held by Harry H. Rogers in the sum of $400,000. Appellant objected to that part of the judgment subjecting his lien to the other liens named, and perfected this appeal.

The facts showed that the association was indebted to appellant in the sum of $9,916.35, and, in order to evidence and secure the debt, on January 18, 1919, it executed the promissory note on which this suit is based, and also executed a deed of trust on its properties, which was filed for record in Real county, where part of the property was located, on February 5, 1921, over one year after its execution, and on November 22, 1921, in Kinney county. There were parts of the lands also in Edwards and Uvalde counties. On July 1, 1920, the association executed to John Rogers, trustee, a deed of trust in the sum of $400,000 to secure a debt to Harry H. Rogers in that sum. That deed of trust was filed for record in Real county on July 29, 1920, was filed for record on August 10, 1920, in Edwards county, was filed for record on October 6, 1920, in Uvalde county, and also filed for record in Kinney county on September 25, 1920. The deed of trust was in each instance in due time recorded in each of the counties named.

On July 1, 1920, the trustees of the association executed to W. H. Lipscomb, trustee, a deed of trust on its property to secure James F. Halpin in a debt of $200,000, which was filed for record and duly recorded in Real, Edwards, Uvalde, and Kinney counties before October 7, 1920.

On July 1, 1920, a deed of trust was executed by the association to John Rogers, trustee, to secure Harry H. Rogers in the payment of a debt for $210,000, and the same was duly filed and recorded in Edwards, Uvalde, Kinney, and Real counties before October 1, 1920.

On July 1, 1920, the association executed to John Rogers, trustee, a trust deed on all the capital stock and certificates and shares thereof of the Uvalde & Northern Railway Company, except 12 shares, to secure a debt to Harry H. Rogers in the sum of $400,000, and said trust deed was duly filed and recorded in Edwards, Uvalde, Kinney, and Real counties before October 7, 1920. All of these instruments were filed for record, and duly recorded in the four counties named, before appellant placed his deed of trust on record in either of the counties, and neither of the trustees or beneficiaries in the different deeds of trust had any notice, actual or constructive, of the existence of appellant's deed of trust prior to the time each of the deeds of trust were filed for record and recorded.

There could be no merit in the contention that the judgment was erroneous in subordinating appellant's lien to those of Halpin and Harry Rogers as to property not included in that described in the deeds of trust to the parties last named. The judgment did not undertake to subordinate the lien of appellant to liens on any property except that described in the respective deeds of trust. The lien is subordinate and inferior to the liens of Halpin and Rogers only as to the property described in their deeds of trust. The property on which Halpin and Rogers have liens is described in the judgment, and the subordination of appellant's lien is as to liens only on property described in the deeds of trust. The general subordination of appellant's lien to the liens held by Halpin and Rogers is not assailed, but the error asserted in proposition 1, under the first, second, and third assignments, is as to property not included in the deeds of trust of Halpin and Rogers. All of the timber rights were covered by the deeds of trust except 3,500 carloads of cedar and cedar products growing in the West brake or Lost creek brake, which had been contracted and sold by the association, and was specially reserved from the mortgages. We overrule the first proposition.

[1] In the deeds of trust the timber rights conveyed were explained as consisting of—

"conveyances of the title to said timber with right to remove same within fifteen (15) years from date of conveyance, and with right of ingress and egress thereto and therefrom, the shortest period of expiration of such right as to any of said lands being fifteen (15) years from and after July, nineteen hundred and twelve (1912)."

[2-4] That part of the deeds of trust did not have the nature and character of chattel mortgages, and consequently the record of the deeds of trust was notice as to the timber rights as well as to the land rights. There is some conflict in Texas on this proposition, which, we think, under a proper adherence to rules in regard to growing timber, should never have arisen. Growing trees are attached to and are a part of the soil, and when land is conveyed of course the timber goes with the title to the land. However, the timber on the land may be sold, with or without conditions of removal from the soil in a certain time, but so long as it is attached to the soil it is a part of the real-

ty, and the laws of registration applying to the realty would apply to the lumber growing thereon. The sale of timber growing on the land is a sale of an interest in the land and has been held to be within the statute of frauds. The reason given for the rule is that growing timber is an integral part of the land, and sale of such timber is open to the same opportunities for perjury and fraud as sales of the soil itself. Devlin Real Estate, §§ 59, 60. The New York case of Green v. Armstrong, 1 Denio, 550, cited by the author, presents the rule clearly as follows:

"An interest in personal chattels may be created without a deed or conveyance in writing, and a contract for their sale may be valid although by parol. But an interest in that which is land, can only be created by deed or written conveyance; and no contract for the sale of such an interest is valid unless in writing. It is not material and does not affect the principle, that the subject of the sale will be personal property when transferred to the purchaser. If, when sold, it is, in the hands of the seller, a part of the land itself, the contract is within the statute. These trees were part of the defendant's land and not his personal chattels. The contract for their sale and transfer, being by parol, was therefore void."

Sustaining the foregoing is Killmore v. Howlett, 48 N. Y. 569.

In some states a very fine distinction has been drawn between cases in which immediate entrance on the land to remove the trees is contracted for, and those in which the time is not definitely fixed for taking possession of and severing the trees from the realty. We can see no other ground for the decision in Boykin v. Rosenfield, 69 Tex. 115, 9 S. W. 318, which has heretofore somewhat obscured the rule in Texas. No authority is given in the case cited, except Jones on Chattel Mortgages. The Supreme Court of Texas in later opinions has cleared up the proposition, and, as said in Lodwick Lumber Co. v. Taylor, 100 Tex. 270, 98 S. W. 238, 123 Am. St. Rep. 803:

"It is a well-settled proposition that trees may be so conveyed or reserved in a deed as to leave in one person a title in fee in the soil generally and in another a like title in the timber. Where this is the case there goes with the title to the timber the right to the use of the soil for its sustenance and of entry upon the land for its enjoyment."

To the same effect are Houston Oil Co. v. Hamilton, 109 Tex. 270, 206 S. W. 817; Chapman v. Dearman, 111 Tex. 132, 229 S. W. 1112.

[5] The mortgages on the standing timber were not chattel mortgages; and were properly recorded. The law as to the registration of chattel mortgages requires that every chattel mortgage be deposited with and filed in the office of the county clerk of the county in which the property is situated, and that such deposit and filing must be done forthwith. If this is not done the statute declares the chattel mortgage shall be "absolutely void as against the creditors of the mortgagor or person making same, and as against subsequent purchasers and mortgagees or lienholders in good faith." Article 5655, Rev. Stats. Appellant's mortgage on the growing timber, even if it was a chattel mortgage as he contends, was not forthwith deposited and filed with the county clerk of any county, but was held for more than a year before it was recorded or deposited and filed, and the claims of Halpin and Harry Rogers had, in good faith, accrued, and their claims would, whether recorded or deposited and filed or not, take precedence over the claims of appellant. The rights of the subsequent mortgagees were fixed without notice of any claim upon the part of appellant, and his subsequent record of his mortgage was too late, and it was utterly void so far as their liens were concerned. McCarthy v. Loan Co. (Tex. Civ. App.) 101 S. W. 835; Tips v. Gay (Tex. Civ. App.) 146 S. W. 306.

[6] Appellant knew that Halpin and Harry Rogers were being solicited, and were contemplating lending large sums of money to the association, and that they did lend the money, and yet he never, at any time before this suit was filed, told Rogers or Halpin that he had a claim against the association secured by a deed of trust. He did not file his deed of trust, but kept its existence a profound secret. So far as the subsequent lienholders were concerned, his deed of trust is null and void, and it was of no consequence whether he knew of the existence of the deeds of trust or not. The subsequent lienholders were innocent lienholders without notice, actual or constructive.

No objection is urged to the failure of the court to affirmatively foreclose a lien on the 3,500 carloads of cedar, but it is stated that a foreclosure "possibly is the effect of the judgment. At least it would necessarily be the legal result." No such lien was foreclosed.

[7] Appellant is an attorney, and prepared a large portion of the common-law trust agreement which created the association. He probably prepared clauses 7 and 8 of the trust agreement, which fully and completely stipulate that neither the trustees nor the holders of certificates issued thereunder should be held to any personal liability on any liability of the association. And yet appellant is insisting on the personal liability of stockholders and officers of the association to him on his note executed by the association. In the note itself, held by appellant, it is stipulated that the trustees of the association shall not be personally liable. Having agreed to the exemption of the of-

ficers, shareholders, and trustees from liability, appellant is not entitled to a judgment against any one bearing any of those relations to the association. That rule is well settled. George v. Hall (Tex. Civ. App.) 262 S. W. 174; Oden v. Boone. (Tex. Civ. App.) 263 S. W. 640; Smith Oil Co. v. Supply Co. (Tex. Civ. App.) 268 S. W. 489.

The first, second, and third propositions under the fifth assignment are overruled. Not only does the fifth assignment complain of the refusal to give him a personal judgment against shareholders, but mixed with it is a complaint because appellant's lien was held to be inferior to the liens of Halpin and Rogers. We have disposed of the latter contention under other assignments. This applies also to the sixth and seventh assignments of error and the propositions thereunder.

There is no merit in the appeal, and the judgment is affirmed.

### On Motion for Rehearing.

[8] The statement that the holders of the liens and the debts secured by them had no notice of the deed of trust of appellant when the debts to them were created and the deeds of trust given is challenged by appellant, who states that "the entire record" discloses actual knowledge upon the part of James E. Halpin of the existence of appellant's deed of trust. To uphold the broad statement made by appellant, he refers to a receipt of Halpin of the deed of trust. A reference to the receipt fails to substantiate the statement made by appellant. The receipt was given for an agreement of settlement between Smith and the association, and a deed of trust given by the trustees of the association to L. J. Smith and E. H. McVey and notes secured thereby. Appellant sued on a note given to him alone, and sought to foreclose a lien evidenced by a deed of trust given to Samuel R. Freet, as trustee, to secure appellant in his debt. The receipt does not show that the deed of trust given to Freet, as trustee, to secure appellant's debt was given to Halpin. In the proposal dated May 8, 1920, a note and deed of trust is described but not identified as the one named in the petition. It is not claimed that Harry Rogers had any notice, either actual or constructive, of appellant's debt or lien. At the time the proposal was made, appellant agreed and acknowledged that the debt of Halpin was secured by a lien superior to his, and no claim of the superiority of his lien was made to Halpin until made through this suit. Harry Rogers owns the claim of Halpin against the association. Halpin swore that appellant never told him that he (McVey) was claiming a first lien on the property, and that he never heard of it until the suit was filed.

Harry Rogers swore that McVey never, prior to the institution of this suit, brought to his knowledge in any way that he had a debt against the association, and never at any time before the suit did he have knowledge that McVey had a deed of trust on the property. The receipt given by McVey to Halpin for the papers held by him did not describe the deed of trust sued on, but one given to secure a debt held by Smith for $33,000 and one held by McVey for $9,916.35. The deed of trust sued on was given to secure one note given by Smith Construction Company to Will A. Morriss for $20,000, one note given by the Association to L. J. Smith for $33,000, and one to McVey for $9,916.35. However that may be, Rogers had no knowledge of the existence of appellant's debt or deed of trust until after the suit was brought, and Halpin swore that neither he nor McVey deemed the deed of trust held by the latter to be a first lien on the property. Appellant did not claim that it was a first lien until he instituted this suit. It is admitted in the motion for rehearing that Rogers did not have notice of the existence of appellant's debt and trust deed, and, if Rogers did not have such notice when he bought Halpin's claim, he is an innocent purchaser as to that claim.

The motion for rehearing is overruled.