FRED BALDUFF *et ux.* v. ONAN F. GRISWOLD.

. (Filed Feb. 8, 1900.)

1. **REAL ESTATE**—*Deed—Mortgage, When.* A deed absolute on its face, given as security for the payment of money, constitutes a mortgage and is governed by the law in relation to mortgages, and the agreement that it is executed as security may be in parol, and may be shown by parol evidence.

2. **DEED**—*Security for Debt—Mortgage—Title.* In order to constitute a deed, absolute on its face, a mortgage, it is not necessary that the conveyance should be made by the debtor, or by him in whom the equity of redemption will exist. It is sufficient if the debtor who claims to occupy the position of mortgagor with the right of redemption, has an interest, legal or equitable, in the premises, and the grantee of the legal title acquired such title by the act and assent of the debtor, and as a security for his debt.

3. **MORTGAGE**—*Lien—Foreclosure—Title Passes, When.* A mortgage upon real estate creates only a lien in favor of the mortgagee, and the legal title does not pass until after foreclosure and sale.

4. **SAME**—*Right of Redemption.* Where a deed is executed as security for a debt, equity will treat such conveyance as a mortgage, and permit the debtor to redeem as against the grantee at any time before his equity of redemption is foreclosed.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before B. T. Hainer, District Judge.*

*Pollock & Lafferty,* for plaintiffs in error.

*J. F. King,* for defendant in error.

Opinion of the court by

BURFORD, C. J.:    The defendant in error, Onan F.
Griswold, plaintiff in the court below, brought this ac-
tion to compel the defendants, Fred Balduff and wife,
to convey to him certain real estate in Kay county,
Oklahoma, and more particularly described as lot 4, in
block 49, in the townsite of Hartman, now a part of
Ponca City.  The petition contained averments to the
effect that Griswold purchased the lot from Barnes &
Dalton under an oral agreement that they would con-
vey to him, by warranty deed, when he should pay the
purchase money, and that he went into possession under
this oral agreement.  That he occupied and improved
the lot by causing a store building to be placed thereon.
That afterwards Barnes & Dalton demanded payment
of the balance of purchase money, and he was unable to
pay the same.  That he then entered into an oral agree-
ment with defendant, Balduff, which was consented to
by Barnes and & Dalton, whereby it was agreed that
Balduff would loan to Griswold the sum of $100, to pay
balance of purchase money for the lot, and that Bal-
duff would take a deed to the lot as security for the
loan.  That pursuant to this agreement Balduff paid to
Barnes & Dalton, for Griswold, the sum of $100, the
balance due on the lot, and Barnes & Dalton, at the
request of Griswold, conveyed the lot to Balduff, which
conveyance he agreed to accept as security for the loan.
It was further alleged that Griswold had tendered to
Balduff the entire amount due under their agreement,
and demanded a conveyance of the lot to him, which
tender was refused, and Balduff claimed a forfeiture
under the deed.  That Balduff took possession of the

lot, collected rents and refused to account for same. And an accounting was demanded, with a further prayer that the deed be decreed a mortgage, and that he be permitted to pay the amount found due Balduff, and that Balduff and wife be compelled to convey to Griswold the lot described. To this petition a demurrer was first filed, on the ground of want of sufficient facts to constitute a cause of action against the defendants. The demurrer was overruled and exceptions saved.

Balduff then filed his answer, which consisted of a general denial, and an affirmative defense to the effect that at the time the deed was executed to him, he executed a bond for a deed to Griswold, and that by the terms of this instrument, if Griswold failed to pay the amount due him by a certain date, he should forfeit all title to the lot, and that Balduff should become the owner of the lot, and that Griswold had failed to make the payment as required, and that a forfeiture had taken effect. To the second defense Griswold replied by a general denial.

The cause was tried to the court, and finding made and judgment rendered in favor of Griswold. By the terms of the judgment and decree, it is found that Griswold is indebted to Balduff in the sum of $165, which is declared to be a first lien on the lot. The deed from Barnes & Dalton to Balduff is decreed to be a mortgage from Griswold to Balduff, and Griswold is given thirty days to pay the amount found due, and on payment of which Balduff and wife are ordered to convey the lot by deed to Griswold, and Balduff is allowed thirty days in which to remove the buildings placed on the lot by him. Balduff excepted to the judgment, and filed his motion for

a new trial, which was overruled by the court, and the Balduffs now bring the case to this court by petition in error.

There are but two propositions presented and relied upon by counsel for plaintiffs in error in support of their assignments of error, viz: First. That the facts pleaded in the petition were not sufficient to constitute a cause of action, either to declare a resulting trust, to decree the deed a mortgage, or an ejectment. Second. The deed from Barnes & Dalton to Balduff being a warranty deed, purporting on its face to be an absolute conveyance could not be defeated or shown to be a mortgage by parol evidence.

There are other propositions argued in the brief, but they are all embraced in the above, and all the assignments of error can best be considered as a whole.

Before taking up the consideration of the questions of law presented, we desire to call attention to one statement contained in the brief of plaintiff in error, on page 2. After stating that Griswold entered into an oral contract with Barnes & Dalton to purchase the lot in question, and that Griswold failed to pay the purchase money and complete the sale, this statement appears: "After that time the plaintiff in error, Fred Balduff, purchased this lot from Barnes & Dalton, and a warranty deed was executed by them to him." The statement that Balduff purchased the lot from Barnes & Dalton, is unwarranted and inexcusable. It is absolutely without support or even contention in either pleading or testimony. It is unfair and liable to be misleading to this court. There is no dispute between the parties as

to the manner in which Balduff secured the deed to the lot. Both the plaintiff, Griswold, and the defendant, Balduff, testified that Griswold, being unable to raise the money to pay the balance due Barnes & Dalton, that Balduuff loaned him the money for the purpose of completing such payment. That Balduff paid the money to Barnes & Dalton, at the request of Griswold, and took the deed as security for the loan. If it could be claimed by implication or reference that Balduff purchased the lot, under his own testimony, it was a purchase from Griswold, and not from Barnes & Dalton; but he did not claim the lot as a purchaser from Barnes & Dalton on the trial of the cause below. He claimed it by virtue of a forfeiture, and by reason of the failure of Griswold to repay the amount paid by Balduff to Barnes & Dalton for him. The testimony fully established the allegations of the petition, and failed to support the allegations of defendant's second defense. The findings of the court are fully supported by the evidence.

Did the trial court err in its application of the law? The theory of the petition was that it was an action in equity to redeem from a mortgage. That the deed, while absolute on its face, was given as security for a debt, and was in fact a mortgage.

It is contended that an oral contract for the purchase of real estate is within the statute of frauds, and cannot be enforced. We do not think this question enters into the case. The petition was good on either one of two grounds: By the terms of our statute, a resulting trust may arise by operation of law, and where a transfer of real property is made to one person, and the consideration is paid for another, a trust is presumed to

result in favor of the person for whom such payment was made. (Sections 3759 and 3760, Stat. Okla. 1893.)

If, as alleged in the petition, Balduff loaned Griswold the money to pay Barnes & Dalton for the lot, and Balduff paid said money to Barnes & Dalton for Griswold, and took the conveyance to himself, then such transactions come squarely within the provisions of our statute, and the conveyance having been made to Balduff, and the consideration for the land having been paid for Griswold, a trust was presumed in favor of Griswold, and Balduff took the title to hold in trust for Griswold, and Griswold had a right to a conveyance of the land from Balduff on the payment or tender of the amount due from him to Balduff under their oral agreement. The petition contained averments which made this kind of a case. When the purposes for which a trust is created cease, the estate of the trustee also ceases. (Sec. 3774, Stat. Okla. 1893.)

But aside from the question of a resulting or implied trust, the petition stated a good cause of action to redeem from a mortgage. It is specifically averred that Balduff, the grantee, loaned a' sum of money to Griswold and took the conveyance as security for the loan. It is contended by plaintiff in error that the mortgage of real estate cannot be created by parol, and that the deed being absolute on its face, the defeasance should have been in writing; and second, that the legal title having passed direct from Barnes & Dalton to Balduff, and not through Griswold, that no mortgage could exist or be created as against him. Neither of these contentions are sound under the terms of our statute, or the established rules of equity.

Section 3262, Statutes of 1893, provides:

"When a grant of real property purports to be an absolute conveyance, but is intended to be defeasable on the performance of certain conditions, such grant is not defeated or affected as against any person other than the grantee or his heirs or devisees or persons having actual notice, unless an instrument of defeasance duly executed and acknowledged shall have been recorded in the office of the register of deeds of the county where the property is situated."

Applying the opposite of this rule, as intended by the exceptions therein, it is plain that where a conveyance of real property purports to be an absolute conveyance, but is intended merely as security for a debt, such grant may be defeated as against the grantee, his heirs or devisees, or persons having actual notice, without such defeasance being in writing and recorded.

Section 3190 provides:

"Notwithstanding an agreement to the contrary, a lien or a contract for a lien transfers no title to the property subject to the lien."

A mortgage in this Territory creates only a lien on real estate, until after foreclosure and sale of the mortgaged property. All contracts of forfeiture are void, and even where a deed is taken as security for a debt, the grantee must foreclose before he becomes the owner of the title.

Section 3191 provides:

"All contracts for the forfeiture of property subject to a lien in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from a lien are void."

Section 3198 provides:

"Every person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed."

Section 12, Laws of 1897, p. 95, provides:

"Every instrument purporting to be an absolute or qualified conveyance of real estate, or any interest therein, but intended to be defeasable or as security for the payment of money, shall be deemed a mortgage, and must be recorded and foreclosed as such."

Construing these various sections of our statute together, there can be no question but that under the laws of this Territory a mortgage creates only a lien on the real estate in favor of the mortgagee, and that the title of the mortgagor cannot be devested except by foreclosure, or by a conveyance other than that constituting the mortgage.

A deed, absolute on its face, but given as security for the payment of money, is in fact a mortgage, and as against the grantee, his heirs and those having actual notice, the fact that such deed is a mortgage may be shown by parol evidence, and the agreement whereby the defeasance is created may be in parol. The holder of a deed absolute, taken as security for a debt, can only acquire title by a foreclosure of his mortgage, and any agreement of forfeiture is void. Any person having an interest in the mortgaged real estate may redeem from such a deed.

In the case under consideration it was alleged that Griswold bought the lot from Barnes & Dalton; that he paid part of the purchase money and took possession;

that he afterwards borrowed the balance of purchase money from Balduff, and caused Balduff to pay it to Barnes & Dalton for him. He became then the equitable owner of the lot, and entitled to the legal title. He caused the legal title to be conveyed to Balduff as security for the money paid to Barnes & Dalton. He then had such an interest in the real estate as clearly entitled him to redeem from the deed executed to Balduff as security for his loan.

But we are not confined to our statutes in support of the doctrines announced. Authorities are abundant to support the judgment of the trial court.

In the case of *Stoddard v. Whiting,* 46 N. Y. 627, a question almost identical with the one under consideration was before the court, and it was there said: .

"The agreement of the vendor to sell and convey the premises made with Abiel Stoddard, vested in him the equitable title to the land, and made him his trustee of the legal title, while he became the trustee of the vendor of the purchase money. This equitable interest in the premises was capable of being mortgaged. A deed absolute upon its face, may be shown by parol to have been intended as a security, and if so shown, will be held to be a mortgage. When the owner of the equitable title directs his trustee of the legal title to convey such title to a third person, as security for a debt of the former to the latter, or as security for any other person, it is obvious that the latter holds such title as mortgagee of the former. That he did direct such conveyance for such a purpose may be shown by parol. This is equally as clear as that an absolute deed may be so shown to have been intended by the parties as a security, and therefore, a mortgage. Whether the legal title is held by the party wishing to

mortgage the land, and the deed, therefore, given by him, or such title held by a third person as his trustee, who conveys the same at his request, does not affect the rule in this respect."

Applying this rule to the case at bar, the agreement of Barnes & Dalton to sell and convey the lot to Griswold and putting him in possession vested in him the equitable title to the lot.    It is true this was an oral agreement, the performance of which could not have been enforced at law, but the vendors were the only persons who could defeat his equity, and they made no effort to do so.  The equitable interest of Griswold in the lot was capable of being mortgaged.  The deed made by Barnes & Dalton to Balduff as security for a debt due from Griswold to Balduff was in fact a mortgage, and while the deed was absolute on its face, it was competent to prove by parol that it was intended for security only, and hence a mortgage.

It was immaterial whether the legal title was in Griswold or not.  It was held by Barnes & Dalton as his trustee, and conveyed to Balduff at his request.  The effect is the same, and clearly entitles him to redeem.

In *Carr v. Carr*, 52 N. Y. 251, the supreme court again said:

"It is well established that a deed absolute on its face can be shown by parol or other extrinsic evidence to have been intended as a mortgage, and that the relation of mortgagor and mortgagee being thus established all the rights and obligations incident to that relation attach to the parties.  The fact once established, either by the terms of the conveyance or the other evidence that the grant was intended as a mortgage, the rights

of the parties are measured by the rules of law applicable to mortgagors and mortgagees, and the conveyance remains but a mortgage until the equity of redemption is foreclosed, and the mortgagee cannot have ejectment against the mortgagor or those claiming under him, until after foreclosure. It is not material that the conveyance should be made by the debtor or by him in whom the equity of redemption will exist. It is sufficient if the debtor and he, who claims to occupy the position of mortgagor with the right of redemption has an interest, legal or equitable, in the premises, and the grantee of legal title has and acquired such title by the act and assent of the debtor, and as security for his debt."

To the effect that a deed absolute on its face may be shown by oral testimony to be a mortgage, are *Hassam v. Barrett*, 115 Mass. 256; *Farmer v. Grose et al.*, 42 Cal. 169; *Overstreet v. Baxter*, 30 Kan. 55; *Moore v. Wade*, 8 Kan. 380; Jones on Mortgages, sec. 331, and cases cited; Rice on Evidence, sec. 167, and cases cited.

It would seem that the rules enumerated in the foregoing authorities are too well settled to admit of argument. Our statutes are in harmony with the equitable principles, and in overruling the demurrer to the petition the court is sustained both by statute and adjudicated cases.

Neither was there error in the admission of evidence or in overruling the motion for new trial. The facts relied upon by plaintiff in error were practically uncontroverted. Clearly, under the evidence in the record, Balduff accepted the deed to the lot as a security for a loan of money to Griswold, which money, at the instance of Griswold, he paid to Barnes & Dalton, and

under the authorities cited, it was competent to show by parol that the deed was intended as security for the payment of money. Nor was it material that the deed was executed by Barnes & Dalton, instead of Griswold, The authorities cited, *supra*, settle the proposition, that the holder of the legal title may execute the conveyance for the one entitled to the legal title, and such conveyance may constitute the mortgage of the person for whom the conveyance is made.

We find no error in the record. The judgment of the district court is right under the issues, and on the facts.

The judgment is affirmed  at costs of plaintiffs in error.

Hainer, J., having presided in the court below, not sitting; all of the other Justices concurring.