## WILLIAMS v. PURCELL et al.

## PURCELL et al. v. WILLIAMS et al.

Nos. 4181, 4496.   Opinion Filed December 22, 1914.

Rehearing Denied February 2, 1915.

(145 Pac. 1151.)

1.  MORTGAGES—Absolute Deed as Mortgage—Record—Foreclosure —Forfeiture—Redemption. An instrument purporting to be an absolute conveyance of real estate, but intended to be defeasible or as a security for the payment of money, is deemed a mortgage, and must be recorded and foreclosed as such.

(a) The holder of a deed absolute, taken as a security for a debt, can only acquire title by a foreclosure of his mortgage, and any agreement of forfeiture is void.

(b)  Any person having an interest in the mortgaged real estate may redeem from such deed.

2.    **VENDOR AND PURCHASER—Pre-Existing Deed—Notice to Purchaser.** Williams, to secure payment of money, executed deed to Pearce; Williams remaining in possession by tenants, receiving the rents and profits. Purcell knew the facts; Goodwin did not; but they went to Pearce and obtained deed to the land, paying therefor $2,000. Goodwin furnished $1,250; Purcell being named as the grantee in the deed, but Goodwin in fact owning a half interest. Held, that both Goodwin and Purcell are chargeable with notice of Williams' title, and that the deed from Pearce to Purcell should be treated as an assignment of the mortgage rights of Pearce.

3.    **ESTOPPEL—Requisities—Good Faith—Change of Position.** Estoppels operate only between parties and privies, and the party who pleads an estoppel must be one who has, in good faith, been misled to his injury.

(Syllabus by the Court.)

*Error from District Court, Pawnee County;*

*L. M. Poe, Judge.*

Action by H. W. Williams against Rebecca J. Purcell and others. From a judgment in favor of plaintiff Williams against defendant Flora E. Pearce, Rebecca J. Purcell and others bring error, and, from a judgment in favor of the administrators and heirs of Purcell, Williams brings error. Consolidated. Affirmed in part, and reversed and rendered in part.

*E. M. Clark* and *Wm. Blake,* for plaintiff in error Williams.

*Biddison & Campbell, John M. Hayes* and *Devereux & Hildreth,* for defendants in error Purcell and others.

*Gilbert M. Gander,* for defendant in error Pearce.

LOOFBOURROW, J.   This action was commenced in the district court of Pawnee county, Okla., by H. W. Williams, as plaintiff, against Flora E. Pearce, defendant, to recover an undivided one-third interest in 80 acres of land situated in said county. The plaintiff is an attorney at law and had been person-

ally acquainted with the defendant for a number of years, during which time he had been her neighbor, friend, and legal adviser. She had, from time to time, loaned him money, and on the 8th day of March, 1909, plaintiff executed a deed to the defendant to all of his right, title, and interest in and to an undivided one-third interest in and to said 80 acres of land; the instrument being, on its face, a warranty deed, but in his petition plaintiff claims that the same was in fact given as security for the payment of a debt he owed the defendant, and that such instrument was, in fact, a mortgage. The deed was executed March 8, 1909, and a few days thereafter delivered to the defendant. In March, 1911, the defendant Pearce executed a deed to the same tract of land to W. M. Purcell for a consideration of $2,000. G. W. Goodwin gave his check for $1,250 to Purcell, which was given to the defendant Pearce, and Pearce took a mortgage for $750 for the balance of the purchase price. Thereafter, and before the commencement of this action, Purcell died, and his heirs and administrators and G. W. Goodwin intervened in said cause. Upon a trial of the issues joined, the court rendered his findings of fact and conclusions of law and entered judgment in favor of Williams against Pearce, decreeing the deed from Williams to Pearce to be a mortgage, and rendered judgment against Pearce in favor of Williams for the sum of $1,147.46. The court found that Goodwin was an innocent purchaser for value and without notice, and that Purcell held in trust for Goodwin one-half of the land so purchased, and that, as between Williams and Purcell, Williams had, by letter, advised Purcell that defendant Pearce had authority and power to sell and dispose of the land; and that Williams was estopped from maintaining an action to set aside said conveyance between his grantee Pearce and the defendant Purcell. From the judgment in favor of Williams against Pearce, the interveners joined Pearce as plaintiffs in error and appeal; that case being numbered 4496 in this court. From the judgment in favor of the administrators and heirs of Purcell, and

492        SUPREME COURT OF OKLAHOMA.

Williams v. Purcell et al.    Purcell et al. v. Williams et al.

Goodwin, H. W. Williams appeals; that case being numbered 4181 in this court—the cases being consolidated.

The record in No. 4496 contains nine assignments of error by the plaintiff in error Pearce; the first being error in overruling motion to make petition more definite and certain. On the trial of the case the matter complained of was thoroughly developed, and it does not appear that the plaintiff in error was materially prejudiced by the ruling of the court.

The second assignment is error in overruling the demurrer to the petition. There is no merit in that contention, as the petition states a cause of action.

The third and fourth assignments of error are so general as not to point out the real error complained of, and the same are too general and indefinite to present a question for review.

The fifth assignment alleges error in overruling the demurrer of the defendant Pearce to the evidence of the plaintiff Williams. This ruling was correct.

The remaining assignments may properly be grouped and determined in ascertaining whether or not the record discloses evidence reasonably tending to support the findings and judgment of the trial court, and the first proposition to be determined is whether or not the deed given by Williams to Pearce was intended as a deed or a mortgage.

Both Pearce and Williams testified on the trial of the cause, and a number of letters which passed from one to the other were offered in evidence. These letters were written at a time when the relations of the parties were friendly and before any controversy arose, and therefore ought to afford very satisfactory evidence as to how each regarded the character of the instrument. The deed was executed March 8, 1909. On June 15, 1909, Williams wrote a letter to Mrs. Pearce, in substance as follows:

"My Dear Friend: I received your letter this morning and will answer now. I am sorry to hear that everything seems to go wrong and that you are discouraged. * * * I will try and get along out here some way until I can sell that oil land or else something else in Oklahoma. If you go to Okla. you go to Tulsa and see E. M. Riese, he has the oil lease on that land and he knows that my share in the land is very cheap at $1,000.00 and maybe he can find a buyer at that price and you can make the deed right there, then you would have the money to buy a rooming house. * * * I don't suppose anyone with a rooming house would trade for oil land but you can try it. * * * You said you sent some money. ∴ Now I don't want you to rob yourself or the girls or get into any tight place for money so if there is any danger of that don't send the ——— and I will get along some way."

On September 24, 1909, Williams again wrote Mrs. Pearce from Clovis, N. M. In the letter he states:

"Say about that oil land. I send you Purcell's letter. He wants to buy my interest. I told him before you know I had sold it and it is yours so you tell him the same and go ahead and sell it to him and make the deed or I can make it out here and send it to you and he can meet you in Jennings and pay you the money and price it at $1,100.00 and I think he will take it at that price. I will write him today and tell him you gave me $1,000.00 and you have got to have $100.00 for interest and that I don't think you will sell for any less. He lives six miles S. E. of Cleveland. You write him and make him this offer and you will hear from him right away I think. Don't tell anyone that any of the money is coming to me but that you paid for it in full and all the $1,100.00 is yours. He says in his letter he wants to sell to you but that is a sham. I know him and know by his letter he wants to buy and not sell. He is pretty smooth."

On October 19, 1909, Williams again wrote Mrs. Pearce from Clovis, N. M., as follows:

"My Dear Friend: I received your letter a few days ago and glad to know you are getting settled down. I read Purcell's letter and I think he wants to buy that land and will pay the $1,100.00

494        SUPREME COURT OF OKLAHOMA.

Williams v. Purcell et al.   Purcell et al. v. Williams et al.

for it when he sees he can't get it for less. He is a smooth schemer. I know him well. We will not write him any more and I think inside of a month or so you will hear from him again. About the taxes I paid Purcell the money for the first half of 1908 taxes before I left, so there is only the last half of 1908 to be paid as this year 1909 taxes are not due yet. I will write him to pay it and send me the amount and I will pay him. I am getting business started up some and think I will make it here all right. Keep me posted on the land deal if he writes any more."

On December 29, 1909, Williams again wrote Mrs. Pearce from Clovis. In the letter he states:

"I wrote to Bill Purcell about that land and told him to let me know what taxes he has paid but I haven't heard from him yea."

On January 22, 1910, Williams again wrote Mrs. Pearce from Clovis, N. M. In this letter he states:

"Say about that oil land. I haven't heard from Purcell and I guess he thinks he will get it for much less than it is worth. So I would rather you would take it for what I owe you. I would rather do that than to sell to him for a $1,000.00 as I know all about the oil business and oil lands and when they quit finding big new oil fields then oil will get scarce in a year or two and then it will sell for several thousand dollars with many buyers after it. The whole 80 is good oil land with one well drilled on the poorest corner. I know there is lots of oil wells that soon play out and don't amount to anything but this case is different. When the price of oil gets better wells will be drilled all over it and will bring an income of $100.00 a month. This one well pays $5.00 a month a piece at 35c a barrel. If you want to do this I will make out the papers to you so you will draw the money for the oil."

On June 15, 1910, Williams again wrote Pearce from Clovis, in part:

"Write me and let me know what kind of a trade you can make on that oil land."

On September 25, 1910, Mrs. Pearce wrote to Williams, from Coffeyville, Kan., a nice, friendly letter.  In the letter she states:

"How are money matters with you.  I am needing some pretty bad.  Would like to buy some stock as we have lots of feed and will have plenty of pasture."

On October 14, 1910, Mrs. Pearce again write Williams from Coffeyville, Kan.; the letter being friendly in character and discussing her business matters.  In the letter she also states:

"I think if Purcell will give eight hundred dollars for that oil land you better let him have it.  I will take eight hundred and call us square if you sell it right away for I need my money.  This finds us all well.  Hoping you are the same."

On December 11, 1910, Williams again wrote Mrs. Pearce from Clovis, N. M., as follows:

"My Dear Friend:  I received your letter some time ago and have waited answering to see if I could find a buyer for the land.  I sold that ¼ interest in that other 80 acres I told you about that I hadn't paid for.  Sold it for $375.00.  That paid the debt in full and all the interest.  It was nothing but a rock pile no good for anything but a chance for oil and they are getting oil fever again at Cleveland.  Have struck two 600 barrel wells in a deep 2,300-foot sand, two miles northeast of our land and they are drilling closer now and if that deep oil is on our land and it looks very favorable it will be very valuable as it is a good thing even in the 1,300-foot sand, as we have it now.  Jim Devins an oil man at Tulsa gave me this news in a letter yesterday.  I wrote Bill Purcell some time ago to find out the conditions there but he hasn't answered it and I am writing him again today.  I think he is scheming to get hold of our land for a little of nothing compared to what it is worth.  Am also going to write to other parties at Cleveland to see what I can find out and let you know."

On December 23, 1910, Mrs. Pearce wrote Williams from Coffeyville, Kan.  The letter reads in part:

"Friend Bert:  I received your letter several days ago. * * * Well I was in hopes you would of sold that oil land for I am in

need of my money. We have been putting in a levee here on the creek. Cost us a great deal more than we expected. * * * For as that oil land being getting higher I think that will be a long time. What is Purcell's initials? I might go down there some time before long. If I should I would try and see him. If you would send me 50 or a hundred dollars I could get along without borrowing any more. If you can't send it all at once send it as you can. * * * Don't forget to tell me Purcell's given name. I will try these real estate men again on a trade. How much does the well bring you a month?"

On January 2, 1911, Williams again wrote Mrs. Pearce from Clovis, N. M., as follows:

"My Dear Friend: I wrote Bill Purcell a few days ago about the oil business and got his letter yesterday and I send it to you. You see by this letter that things are looking good there again. He wants your name so I will write him and tell him where to write you. These big 500 barrel wells he writes about are three miles northeast and the 500 barrel wells 3 miles southwest of our land so you see we are right halfway between. These wells and 2,200-foot and we already have the oil at 1,300 feet. The excitement is getting high there and we will soon have some big offers on the land as we are right between the big wells we are sure of big wells ourselves."

On March 13, 1911, Williams again wrote Mrs. Pearce; the portion of the letter offered in evidence being as follows:

"* * * A mortgage on it to secure him. After I get the quitclaim deed back from you and as soon as I hear from him and he says he will let me have the money I will let you know and we can all meet at Cleveland or Jennings and fix up the papers and get your money. It will likely be two weeks before I get matters fixed so when I come there will be no delay. I will get my business shaped up here so I can stay a month or so when I come and will go with you back to coffeyville. You spoke about them wanting a lease on your land. You mustn't let them have it unless they want to pay pretty well for it. Will close for this time. Write me and let me know if you can come to Cleveland when you hear from me."

On March 10, 1911, Mrs. Pearce wrote to Williams, in part, as follows:

"Friend Bert: I have just got home from Jennings. Been down there to see about leasing; when I got home found two letters from you. While down saw in a paper Pawnee paper that there was a drilling machine on your land just started a well. Oh I tell you there is lots of new wells all the way from Coffeyville to Cleveland. I think I have the item in a paper. I will see if I can find it will inclose it."

The remainder of the letter deals with personal matters, except the following postscript:

"I learned a little more about the man that was here to see about your land. He is a contractor for some oil company. Yes I will stand them off on the land until you can come and attend to it."

On March 15, 1911, Mrs. Pearce wrote Williams, evidently in response to the letter of March 13, 1911, as follows:

"Friend Bert: I just received your letter. If nothing turns up more than I expect I could come. I expect Bonnie before long and Jim is in town. Don't think he is able to work. You could send the money and deed to the American State Bank here in Coffeyville and I could sign the deed and return you the deed by return mail. I don't expect Bonnie will be able to do much and I am boarding some gas men. If they should still be here it would be hard for me to get away but if you can't arrange it that way I will come to Cleveland."

On the 21st day of March, 1911, Mrs. Pearce executed warranty deed to the land in controversy to Purcell, and on the same days wrote Williams the following postal card:

"I have sold the land. Could not afford to take any chances any more as the taxes have not been paid and a law suit against it."                          Mrs. F. E. Pearce."

On March 23, 1911, Williams sent Mrs. Pearce the following telegram:

498 SUPREME COURT OF OKLAHOMA.

Williams v. Purcell et al.   Purcell et al. v. Williams et al.

"Your card received. Stop the sale. Will start there to-morrow."

The foregoing letters clearly show that the parties regarded the deed simply as security. If this had not been the common understanding of Mrs. eParce and Williams when he wrote the letter of September 24, 1909, Mrs. Pearce would, in all probability, have indicated to Williams, in no uncertain terms, that the land was hers and that he had no interest in it. In the letter of January 22, 1910, Williams states:

"I would rather you would take it for what I owe you. I would rather do that than to sell to him [Purcell] for a $1,000.00," etc.

That was not even an offer, at most a mere suggestion, and there is no evidence that Mrs. Pearce ever acted upon the suggestion and proposed to accept the land in lieu of the money that Williams owed her. In the letter of October 14, 1910, she recommends that the land be sold to Purcell for $800, and states:

"I will take $800.00 and call us square if you sell it right away, for I need the money."

In the finding of the trial court that the deed from Williams to Pearce should be treated and considered as a mortgage there is no error. See *Krauss v. Potts,* 38 Okla. 674, 135 Pac. 362; *Wagg v. Herbert,* 19 Okla. 525, 92 Pac. 250; *Balduff v. Griswold,* 9 Okla. 438, 60 Pac. 223; *Weiseham v. Hocker,* 7 Okla. 250, 56 Pac. 464.

The court rendered judgment in favor of Williams against Mrs. Pearce for $1,147.46, the amount remaining in her hands after satisfying the indebtedness due from Williams to Mrs. Pearce.

It is contended by counsel for Mrs. Pearce that she should recover from Williams the further sum of $200, the expense of a trip made by her to Arizona. In her answer it it alleged and the record shows that, in the course of their correspondence, Wil-

liams persuaded Mrs. Pearce to make a trip to Arizona, and suggested, as she contends, that she and her three children could each file upon 320 acres of land. She made the trip to Arizona, but the country did not suit her, and she contends that she could only file her children on 160 acres of land each, and the expense of this trip to her was $200. But this contention was properly ignored by the trial court for the reason that the proof does not establish a cause of action against Williams as to this item.

· She further contends that at one time she discounted some notes in order to secure money to loan Williams, and that by reason thereof she lost the sum of $36, and that Williams should be charged with the amount of this discount. The court found that by reason of the confidential relations existing between Williams and Mrs. Pearce, Williams owed her the highest degree of good faith in dealing with her; that, inasmuch as he did not execute his note or any other evidence covering the amount of his indebtedness to her or fix a time within which the same was to be repaid, he is guilty of bad faith as a confidential adviser; and that, had these loans been made by her to a third person, he would undoubtedly have advised her to take notes bearing the legal rate of interest and fixing the time of payment, but, as he did not do so, that he should be required to pay, not only the principal, but, in addition thereto, interest at the rate of 10 per cent., and as 10 per cent. is the maximum rate which could have been exacted, and she has received that rate upon the entire amount of the indebtedness, the $36 item is thereby compensated.

As to the status of Purcell and Goodwin, the instrument from Williams to Pearce being on its face a deed but in fact as between them a mortgage, on the day that Williams wrote the letter to Mrs. Pearce, dated September 24, 1909, he wrote the following letter to Purcell:

"Dear Bill: I recd. your letter a few days ago, and was glad to hear from you and to know you are well and happy and buy-

ing more land.  Sorry to hear of poor old Paulus in such a plight.  I came here the last of July.  Arizona is a poor country to go to now as everything is copper and the copper business is in worse shape than the oil business.  This is a booming railroad town and a good farming country; they raise all kinds of crops here better than Okla. this year I guess.  The woman I sold my Warren interest to is Mrs. F. E. Pearce of Jennings, Okla.  You can write her there.  She has a farm 3 miles west of town.  I wrote her today and gave her your letter and told her to write what she would take.  She has plenty of money but she only bought my interest in the place to accommodate me.  She don't know anything about oil land, so I don't think she would buy buy any more interests in the land.  She gave me $1,000 for it and to get 10% interest and some other expense she was out, she will have to get $1,100.00 for it and she won't take any less, I don't suppose, as I have explained to her the land is worth much more money than that.  The Standard will soon have most of the producers froze out and get the holdings then the price will jump.  This country is like Okla. was 15 years ago, lots of people coming here and buying claims and town property.  Will close.

"Yours truly,      H. W. Williams."

Afterwards Williams says he wrote another letter to Purcell, of which he had no copy, and that, Purcell being dead at the time of the trial, the court properly refused to permit Williams to testify as to its contents.  But on December 29, 1910, Purcell wrote Williams the following letter:

"H. W. Williams, Clovis, N. M.:  Well old friend I received your letter yesterday and was truly glad to hear from you.  It had been so long since I had any word from you that I thought you had forgotten me.  Well as to the oil business we have what promises to be a real oil boom sure enough.  They have a well just across the river from Thomas that is making 4,000 barrels every 24 hours and they have one on old man McNeal's farm just 2 miles straight south of my home place that is said to be making 500 barrels so you see that things are looking pretty good again.  Nearly everything is leased up again and they are paying some fancy prices for a lease.  I own the old Paulus farm now and the neighbors are talking about it already.  Ha, Ha!  Well

I never heard any more from the woman that you sold the Warren to and I have forgotten her name and address, wish you would send it to me.   So no more at this time.

"Your friend,      W. M. Purcell."

And on March 20, 1911, Purcell wrote Williams the following letter:

"Mr. H. W. Williams, Clovis, New Mex.—My Dear Friend: I received your letter Saturday.   I was not at home when it came so please excuse the delay.   In regard to the loan on your interest in the Warren (referring to the land in controversy) I doubt you being able to raise that much money on it alone.   Everybody here has a very bad dose of cold feet just at this time on account of so many dry wells just drill.   The Thomas is dry and the McFall is dry and the Lucas is dry and the Edmunson is dry. Have scared everybody but I still have faith in the Warren myself and will have until it is proved dry.   I will buy your interest in it so that you will be able to pay the woman back her money and have a little profit yourself, if that would suit you, providing that would suit you.   I had thought all the time that you had sold outright but if you have not and want to consider a small profit above the indebtedness please let me know at once before my faith is shaken with the rest of them for if there is another dry one or two drilled the thing is all off."

"Your old friend,      W. M. Purcell."

On the same day this last letter was written Purcell and Goodwin went to Coffeyville, Kan., to buy the land of Mrs. Pearce, and on the next day she executed the deed to Purcell.

On the trial of the cause the court made the following findings of fact:

"XXI.   That the said W. M. Purcell, in company with G. W. Goodwin, a codefendant, the day after he addressed his letter to Williams in which he stated to Williams that he had understood Williams had sold his interest outright, went to Coffeyville, Kan., where the defendant Pearce resided, and on the following day, March 21, 1911, consummated a deal whereby they purchased the

502    SUPREME COURT OF OKLAHOMA.

Williams v. Purcell et al.   Purcell et al. v. Williams et al.

interest of the defendant Flora E. Pearce for the consideration of $2,000.

"XXII. That the codefendant Goodwin advanced or paid $1,250 of this amount, and that the defendant Flora E. Pearce made, executed, and delivered the deed to the land; the same being placed in a Coffeyville bank until Goodwin's check should be honored, after which the same was forwarded to the grantee, Wilson M. Purcell.

"XXIII. That the said G. W. Goodwin was the equitable owner of an undivided one-half interest in the interest purchased under said deed, and that his said interest was held in trust by the said W. M. Purcell for his use and benefit.

"XXIV. That the said G. W. Goodwin had no notice, either actual or constructive, that the plaintiff Williams owned or claimed any ineerest in the land in controversy.

"XXV. That said W. M. Purcell understood or believed that the plaintiff was claiming an interest in the land at the time of the purchase from Pearce."

And the following conclusions of law:

"I. As between the plaintiff H. W. Williams and the defendant Flora E. Pearce, the deed in controversy is to be treated and considered as a mortgage; the plaintiff having the right to recover from the defendant Flora E. Pearce all sums of money over and above and in excess of her full amount of indeitedness due from said Williams to her, including interest to the date of the sale by her.

"II. That as between Williams and the defendant G. W. Goodwin, inasmuch as said deed was of record, there was no defeasance clause of record to give constructive notice that the same was to be treated as a mortgage, and that there was no evidence to show that said Goodwin had actual notice that same was a mortgage; that he advanced his money to the amount of $1,250 for a half interest in the land described in the deed of conveyance from Flora E. Pearce to W. M. Purcell; that it was understood between Purcell and Goodwin that he was to have an undivided half interest in the land described in the deed of convey-

ance from Flora E. Pearce to W. M. Purcell; that he is a *bona fide* innocent purchaser for value without notice; and that he is entitled to a decree quieting his title as against the plaintiff Williams and all other parties joined in this suit in an undivided one-sixth interest in the land in controversy.

"III.    As between the plaintiff Williams and the defendant W. M. Purcell, that inasmuch as the plaintiff Williams had by letter advised the said W. M. Purcell that he had sold this land to the defendant Flora E. Pearce and had advised him to correspond with her relative to purchasing the same, giving to him her address, he thereby led Purcell to believe that Flora E. Pearce was authorized and empowered to sell and dispose of this land and to fix the price, and that having placed Purcell in this position, there being no evidence to show that he had revoked her power to sell or that he had notified Purcell that he had revoked her power to sell, he is estopped from maintaining an action to set aside a conveyance between his grantee Flora E. Pearce and the said W. M. Purcell, unless it should be disclosed by the evidence in the case that the said W. M. Purcell practiced a fraud upon the said Flora E. Pearce in the consummation and closing up of the deal.

"IV.    That there was no fraud practiced by Goodwin and Purcell in closing up the deal with the defendant Flora E. Pearce, that they were dealing at arms length; and that they paid a consideration that was not grossly inadequate for the undivided one-third interest described and conveyed in the deed from her to Purcell, and that therefore the said plaintiff is not entitled to recover as against Purcell."

The 80 acres of land in question had, for several years prior to the time Mrs. Pearce executed the deed to. Purcell, been the proprty of one Allen, W. M. Purcell, and Williams.   There was a small producing well thereon; the same being held by the Paova Oil & Gas Company by lease from Allen, Purcell, and Williams, and Williams' share of the royalties was paid to him up to the time Mrs. Pearce deeded to Purcell.   Purcell had consulted Williams as to permitting a family to reside in the house on the land and take care of the small field and orchard thereon, to which

504 SUPREME COURT OF OKLAHOMA.

Williams v. Purcell et al.   Purcell et al. v. Williams et al.

Williams had assented. Williams was therefore in actual possession by his lessee and the family who lived in the house. Mrs. Pearce had never been in possession of the land, nor seen it, nor received rents and profits therefrom. The uncontradicted testimony of W. A. Stockton is that, at the time Mrs. Pearce executed the deed to Purcell, the land was reasonably worth $25,000.

Section 1158, Rev. Laws 1910, provides:

"Any person purchasing or taking any security against real estate in good faith and without record notice from one holding under an instrument purporting to be a conveyance but intended as security for the payment of money, and which instrument has been duly recorded without any other instrument explanatory thereof, shall be protected to the extent of the purchase price paid or actual outlay occasioned, with lawful interest, against all persons except those in actual possession at the time of such purchase or outlay."

And section 1159, *Id.,* provides:

"Any conveyance other than as above provided, by one holding under an instrument purporting to be a conveyance, but intended as security, shall be deemed and treated as an assignment and transfer of the mortgage rights of an indebtedness due the maker thereof."

This court, in *Balduff v. Griswold, supra,* construing section 1156, Rev. Laws 1910, held:

"The holder of a deed absolute, taken as security for a debt, can only acquire title by foreclosure of his mortgage, and any agreement of forfeiture is void. Any person having an interest in mortgaged real estate may redeem from such a debt."

In construing the three sections of the statute above mentioned, this court, in the case of *Krauss v. Potts, supra,* said:

"The foregoing statutes appear to abridge the rights of the innocent purchaser for value in such cases to the amount of the outlay with interest"—citing *McNeil v. Jordan,* 28 Kan. 7.

Since Pearce could not have acquired title to the land under the deed from Williams, except by foreclosure, it follows that Purcell, who was in possession of all the facts, could acquire no greater rights than she held, nor could Purcell invoke the doctrine of estoppel. He secured property of the value of $25,000 for $2,000. This fact, when considered in connection with his letter of March 20, 1911, *supra,* and the further fact that he immediately proceeded with Goodwin to close up the deal with Mrs. Pearce, does not conform to our idea of good faith and fair dealing. In 16 Cyc. 747, the law applicable to such a situation is stated as follows:

"An estoppel *in pais* is never allowed to be used as an instrument of fraud, but only to prevent injustice, and it is therefore essential that the party claiming the benefit of the estoppel must have proceeded in good faith."

Goodwin is in no better position than Purcell. He permitted Purcell to act for him in the deal, and, as claimed by Goodwin and found by the court, Purcell took the deed in his own name, holding the legal title of Goodwin's interest in trust for him. That Wlliams remained in possession by lessee and tenant and received the rents and profits, and that Mrs. Pearce was never in possession up to the time she deeded to Purcell, was a fact which Goodwin could easily have ascertained, had he desired so to do.

There is some testimony tending to show that Purcell exhibited to Goodwin the letter written by Wlliams to Purcell on September 24, 1909; and it is contended that the writing of this letter by Williams to Purcell would estop him from claiming title as against Goodwin. The rule, stated in 16 Cyc. 777, is:

"Persons Affected—To Whom Available.—Estoppels operate only between parties and privies, and the party who pleads an estoppel must be one who has in good faith been misled to his injury."

In Bigelow on Estoppel (6th Ed.) 617:

"Only parties and their privies are bound by their representations, and only those to whom the representation is made or intended to influence, and their privies, may take advantage of the estoppel. If the case was *inter alios,* there can be no estoppel."

In *Mueller v. Pondir,* 55 N. Y. 325, 14 Am. Rep. 259, it is held:

"In obtaining knowledge of a private communication addressed to another party cannot claim to estop the person making the communication by admissions therein contained."

In *Owens v. B. & O. R. Co.* (C. C.) 35 Fed. 715, 1 L. R. A. 75, it is held:

"A member of a railroad relief association is not estopped from claiming compensation from the railroad company, being a distinct corporation, for an injury from a collision, by the fact that he had previously been compensated by the relief association for the injury, which he then falsely alleged was caused by malaria," etc.

In *Murray v. Sells,* 53 Ga. 257, it is held that one who had been guilty of fraud as to a particular parcel of land in his dealings with one person, so that as to this person he is estopped, does not estop him as to another person who is not a privy in estate with the first. See, also, *Second Nat. Bank v. Walbridge,* 19 Ohio St. 419, 2 Am. Rep. 408; *Figg v. Handley,* 52 Cal. 244; *Oliver v. Lansing,* 59 Neb. 219, 80 N. W. 829.

Since both Purcell and Goodwin took with notice, or were at least chargeable with notice that Williams had an interest in the land, they should be subrogated to the rights of Mrs. Pearce; that is, the conveyance from Mrs. Pearce to Purcell should be treated as an assignment of the mortgage rights held by her under the deed from Williams to Pearce, as provided by section 1159, *supra.*

Judgment must be rendered canceling the mortgage upon the land in controversy given by Purcell to Mrs. Pearce. The judg-

ment in favor of Williams against Mrs. Pearce in the sum of $1,147.46 is set aside.  Judgment is rendered in favor of Goodwin, the heirs and administrators of Purcell, in the sum of $852.54, together with interest thereon at 10 per cent. together against Williams, the same being the amount owed by Williams to Mrs. Pearce, and the same is a lien upon the land in controversy and foreclosure thereof is decreed.  The costs are taxed as follows: One-third to Williams; one-third to Mrs. Pearce; one-third to Goodwin and Purcell's representatives.

TURNER, RIDDLE, and BLEAKMORE, JJ., concur. KANE, C. J., absent and not participating.