## MERCHANTS' NAT. BANK OF SALLISAW v. FRAZIER et al.

No. 7479.   Opinion Filed July 25, 1916.

Rehearing Denied August 25, 1916.

(159 Pac. 647.)

1. **Replevin — Actions — Admissibility of Evidence.**

In any replevin action, the subject of inquiry is the right of possession to the property involved, and in the trial thereof any evidence is admissible which properly determines the ownership and the right of possession thereof.

2. **Chattel Mortgages—Bona Fide Purchasers—Record As Notice.**

The chattel mortgage, not acknowledged before a notary public and attested by only one witness, where good between the parties, is not subject to record, and if recorded is not constructive notice of its contents so as to entitle the mortgagee therein named to a lien superior to a subsequent incumbrancer in good faith and without notice.

(Syllabus by Hooker, C.)

Error from District Court, Sequoyah County; John H. Pitchford, Judge.

Action by the Merchants' National Bank of Sallisaw against G. F. Frazier and W. E. McConnell and others intervene. From an adverse judgment, the plaintiff brings error. Affirmed, but reversed in part.

Franklin & Carey and Frye & Frye, for plaintiff in error.

McCombs & McCombs, for defendants in error.

Opinion by HOOKER, C. This suit in replevin was instituted by the bank against G. F. Frazier to recover the possession of certain personal property in which the bank claimed a special interest by virtue of certain notes and chattel mortgages executed by one Frazier to other parties and thereafter assigned to the bank. After the filing of said action the other defendants intervened and claimed all of the property sought to be recovered in this action, and executed redelivery bonds therefor, and obtained possession of the property.

It appears from the evidence that in 1911 one W. S. Coombs made a contract for the purchase of certain real estate from one John Coombs, and that W. S. Coombs entered into possession of said property, and in the fall of 1911 made a contract with G. F. Frazier to cultivate said real estate for the year 1912, and by the terms of his contract he obligated himself to furnish Frazier certain provisions, etc., to enable him to cultivate said land, and he also sold to Frazier certain stock, and in order to secure the payment for the stock, provisions, and rent of the land the said Frazier executed to W. S. Coombs his note, and secured the same by chattel mortgage on certain personal property. Frazier took possession of the real estate under the lease, and attempted to cultivate the same for the year 1912, but in the month of May thereof, a flood destroyed the crop which he had planted on said place, and thereafter Frazier requested W. S. Coombs for further assistance, in order that

he might plant and cultivate said land in crops, and it is contended by the defendants in error that the said W. S. Coombs refused to comply with this request, and informed the defendant in error and other parties that he intended to turn said place back to his vendor, John Coombs, and sue him for damages for misrepresentations, and that the said W. S. Coombs did surrender the possession of said place to John Coombs, and refused to have anything further to do with said farm, either in complying with his trade with John Coombs or in the cultivation of the crops by Frazier, and that thereupon the defendants in error McConnell and Bradshaw leased the farm from John Coombs and hired Frazier by the month to work the crops, and that the crops thus cultivated by Frazier on said land belonged to them and not to Frazier, but upon the other hand, the bank contended that W. S. Coombs continued as the landlord of Frazier, and made arrangements whereby Frazier was enabled to cultivate his crops, and that he did not surrender possession of said property until in the fall of 1912 to John Coombs. As to the crops grown on said property by Frazier in 1912, an issue of fact was here raised between the bank, as the assignee of the note and mortgage given by Frazier to W. S. Coombs, and McConnell and Bradshaw, claiming to have leased the same from John Coombs after the flood in May, 1912, the bank claiming a lien on said crops by virtue of the mortgage aforesaid, and the other to be the absolute owner of said crops by virtue of a lease from John Coombs and having hired the crops cultivated.

Upon the evidence presented in the trial below the court found as a fact that W. S. Coombs did surrender the land, after the flood in 1912, to John Coombs, and that Frazier did thereafter work for wages for McConnell and Bradshaw in the cultivation of said crops, who leased the same from John Coombs, and that Frazier did not have any interest in said crops at the time of the institution of this suit. We cannot say that this evidence does not support the finding of the court upon that proposition. It must be borne in mind that before the bank is entitled to recover, it must show that Frazier had an interest in the crops, which it did not do, but upon the contrary the court found as a fact that Frazier did not have any such interest, and, the finding of the court being supported by the evidence, this court cannot disturb the same.

The position assumed by the bank that the evidence introduced by the defendants in error, going to show that W. S. Coombs abandoned the farm and that John Coombs rented the same to McConnell and Bradshaw after the flood, and that Frazier cultivated said crops for wages as the servant of McConnell and Bradshaw, is an attempt to vary the terms of a written contract is not well taken, and is not tenable in this case. If any one without his consent cultivated the land of W. S. Coombs in 1912, the law affords him a remedy to collect his rent, but that fact of itself cannot give Frazier an interest in the crops grown thereon, when as a matter of fact he did not have any. Some one might be liable to him for rent, but that would not give the bank here a lien upon the crops by virtue of a mortgage given by Frazier as claimed by the bank.

It is also urged that the title of the landlord cannot be disputed in this case by Frazier, and that the defense offered by Frazier and his codefendants, to the effect that W. S. Coombs, after the flood in May, 1912, ceased to be the landlord of Frazier, is not permissible. In Welchi v. Johnson, 27 Okla. 520, 112 Pac. 989, this court said:

"It is a general rule that a tenant who does not surrender back to his landlord possession of the demised premises will not be permitted, so long as he holds the possession which he originally derived from his landlord, to deny his landlord's title. But this rule is limited to the title that the landlord had at the inception of the tenancy. The tenant is only estopped to deny that which he has once admitted. When he takes possession under the landlord, he thereby admits the title under which the landlord then holds, and the landlord's right to execute the contract under which defendant takes possession; and the tenant is forbidden to thereafter deny such title or right as long as he retains possession of the premises and enjoys the benefit of the contract; but he may show that the right and title of the landlord existing at the creation of the tenancy has, since that time been terminated, expired, or extinguished."

See, also, Indian Land & Trust Co. v. Clement, 22 Okla. 40, 109 Pac. 1089.

In 24 Cyc. 951, it is said:

"The rule that a tenant will not be permitted to deny his landlord's title so long as he holds the possession originally derived from him does not forbid the tenant from showing that the landlord's title has expired or been extinguished since the creation of the tenancy. The tenant may show that the landlord's estate has expired by limitation since the creation of the tenancy, as by the death of the landlord."

The same author at page 952 said:

"A tenant may show that the title of his landlord under which he entered has passed by operation of law to a third person, and that he holds under the new owner."

See Farris v. Houston, 74 Ala. 162; Rhyne v. Guevara, 67 Miss. 139, 6 South. 736; Walker v. Fisher, 117 Mich, 72, 75 N. W. 144; Lancashire v. Mason, 75 N. C. 455; and other authorities cited in notes 80 and 81, page 952 of 24 Cyc.

This rule is also approved by Underhill, pages 927 and 934 of his work on Landlord and Tenant.

Under the authorities it was permissible for Frazier and the codefendants to show that W. S. Coombs had surrendered or abandoned the title which he claimed to the property at the time he made the contract with G. F. Frazier to cultivate the same, and under which Frazier took possession of said property. The trial court having found this issue adverse to the bank, and there being no error apparent to us, the judgment of the lower court upon this issue is affirmed.

The same situation presents itself as to the contentions of Allen-Mayer Bros. and Anderson Skipper.

Upon the issue between the bank and W. E. McConnell, who claimed to be the owner of the two mules in question, another proposition is presented. This mortgage to McConnell was executed in 1910, and the same was never acknowledged, and is attested by the signature of one witness. Under the law then in force this mortgage was not entitled to record, and although it was erroneously placed upon record, the same did not give constructive notice of its existence to subsequent incumbrancers in good faith. The record here shows that in 1912, W. S. Coombs sold certain personal property to Frazier, and furnished him certain provisions in order to secure which Frazier executed a mortgage to him upon the mules, being the same property claimed by McConnell in this action. Under this evidence we are unable to say that the claim of McConnell, based upon said mortgage, is superior to that of the bank, for the contrary is true unless W. S. Coombs knew at the time said mortgage was executed to him that McConnell had a mortgage on said property. The bank here holds the note and mortgage as an innocent purchaser before maturity, and without any notice of intervening equities; and, unless it can be shown that W. S. Coombs knew of the existence of the McConnell mortgage at the time Frazier executed this mortgage to him in 1912 upon the mules

in question, the bank is entitled to recover the possession of said mules. The judgment of the trial court in favor of W. E. McConnell and against the plaintiff in error as to the two mules is reversed and remanded, but affirmed as to the black horse, and the judgment of the court in all other matters is affirmed.

By the Court: It is so ordered.