**NICHOLSON v. PEOPLES NAT. BANK OF CHECOTAH.**

No. 16707—Opinion Filed June 22, 1926.

Rehearing Denied Sept. 14, 1926.

**1. Crops—Growing Peach Crop as Realty.**
A growing peach crop is real property.

**2. Same—Chattel Mortgage on Crop not Notice of Contents.**
A chattel mortgage of a growing peach crop filed and indexed as such, is not constructive notice of its contents.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, McIntosh County; Harve L. Melton, Judge.

Action by Peoples National Bank of Checotah against W. M. Nicholson. Judgment for plaintiff, and defendant brings error. Reversed.

Turner & Turner and H. B. Parris, for plaintiff in error.

Britton H. Tabor and Charles R. Freeman, for defendant in error.

Opinion by RAY, C. The question to be decided is, when simplified, whether a growing peach crop is real or personal property.

J. J. McGill, being the owner and in possession of 80 acres of land, and indebted to the Peoples National Bank, on the 3rd day of January, 1924, mortgaged certain described live stock, farming implements, all crops planted, or to be planted, in the year 1924, and "the product of all fruit crops that I may raise during the season of 1924." The mortgage was executed in the form of a chattel mortgage, and the next day, January 4th, was deposited in the office of the county clerk of McIntosh county, where the parties resided and the land situated, and duly filed and indexed as a chattel mortgage. On April 21st of the same year, McGill, by warranty deed, conveyed the land to W. M. Nicholson. The deed was filed for record in McIntosh county the following day, April 22nd. Nicholson examined the real estate records to see whether McGill's title was clear and free from liens, but did not examine the chattel mortgage records. He had no actual knowledge of notice of the bank's mortgage.

The validity of the bank's mortgage, as between the mortgagor and the bank. is not questioned. The contention is, on the part of Nicholson, that the recordation of the mortgage as a chattel mortgage was not constructive notice of its contents as to the peach crop. If this view of the law is sustained the judgment must be reversed, otherwise affirmed. No question is raised as to the form of the action or the good faith of the parties.

Counsel for the bank cite many authorities, text-books and court decisions, to sustain their contention that the peach crop was correctly treated by the parties as a chattel, and that the filing and indexing the mortgage as a chattel mortgage was constructive notice. These authorities will be considered later. In our view the applicable statutes must be given first consideration. But first, as to the purpose of the enactment of registration laws. The purpose of such laws is clearly stated in the

text of R. C. L., vol. 23, page 171, sec. 25, as follows:

"One purpose of making and keeping a record of the titles to land is that the title and its history may be preserved and protected, so that all persons may obtain knowledge of the state of titles to real estate by deeds and conveyances, and also of all charges and incumbrances; and to protect intending purchasers and incumbrancers against the evils of secret grants. To that end it is provided that an innocent purchaser, having no notice of liens or adverse claims not disclosed by the records in the manner prescribed by the statute, will hold land as against such claims and liens."

The registration statutes of this state provide one set of books for indexing and recording mortgages of real property and another for the recordation of mortgages of personal property.

Section 7637, C. O. S. 1921, provides that:

"Mortgages of real property may be * * * recorded in like manner and with like effect as grants thereof."

Section 7638 provides that the record of a mortgage, duly made, operates as notice to all subsequent purchasers and incumbrancers.

By section 5251, it is provided that:

"No deed, mortgage, contract, bond, lease, or other instrument relating to real estate other than a lease for a period not exceeding one year and accompanied by actual possession, shall be valid as against third persons unless acknowledged and recorded as herein provided."

The next section provides that:

"Every conveyance of real property acknowledged or approved, certified and recorded, as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, incumbrancers or creditors."

All such instruments are required to be indexed and recorded in books required by law to be kept for that purpose.

Section 7650 provides that:

"A mortgage of personal property is void as against creditors of the mortgagor, subsequent purchasers and incumbrancers of the property for value, unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated. * * *"

When a mortgage of personal property is so deposited with the proper office it is required to be indexed in a record required by law to be kept for that particular purpose, and to be kept on file until discharged. When a mortgage of personal property is filed for record under that section, it is by the next section, section 7651, provided that it:

"Operates as notice thereof to all subsequent purchasers and incumbrancers of so much of said property as is at the time mentioned in the preceding section located in the county or counties wherein such mortgage or authenticated copy thereof is filed."

The registration laws being purely statutory, the recordation of a mortgage, whether real or personal property, to be constructive notice, must be filed for record in the manner provided by statute. Wichita Mill & Elevator Co. v. Nat. Bank of Commerce, 102 Okla. 95, 227 Pac. 92; Balduff v. Griswold, 9 Okla. 438, 60 Pac. 223. See, also, Greenville National Bank v. Evans-Snyder-Buell, 9 Okla. 353, 60 Pac. 249; Richardson v. Shelby, 3 Okla. 68, 41 Pac. 378; Campbell v. Richardson, 6 Okla. 375, 51 Pac. 659; Ray v. Southern Trading Co., 29 Okla. 242, 116 Pac. 810; Strahorn-Hutton-Evans Commission Co. v. Florer & Bannerman, 7 Okla. 499, 54 Pac. 710; Merchants Nat. Bank v. Frazier et al., 60 Okla. 156, 159 Pac. 647; Guarantee State Bank v. Moore, 63 Okla. 133, 163 Pac. 272.

All property is classified by statute into two classes, real and personal. Each of these classifications is specifically defined by statute.

Section 8394, C. S. 1921, is as follows:

"Property is either: First. Real or immovable; or Second. Personal or movable."

Section 8395:

"Real or immovable property consists of: First. Land. Second. That which is affixed to land. Third. That which is incidental or appurtenant to land. Fourth. That which is immovable by law."

Section 8397:

"A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines or shrubs. * * *"

Section 8399:

"Every kind of property that is not real is personal."

If the words of the statute are to be accepted literally, it is clear that the growing peach crop must be classified as real property for two reasons: First, at the time the rights of the parties accrued, January 3rd and April 21st, the growing

peach crop was attached to the land, if such crop may be said to have been in existence; and, second, because it was immovable. But it is not contended that the peach crop was in existence at the time the mortgage was executed, but that such mortgage is authorized by section 7409, C. S. 1921, which is as follows:

"An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest."

Under that section this court has upheld chattel mortgages upon growing crops, or crops thereafter to be planted. In construing this statute this court, in the case of Reeves & Co. v. Sheets, 16 Okla. 342, 82 Pac. 487, in the second paragraph of the syllabus, held:

"While a mortgage upon crops to be grown in the future may be valid, a mortgagor cannot create a lien upon property which he does not own at the time, and in which he afterwards acquires no interest."

Upon the theory that the peach crop was not in existence at the time McGill deeded the land to Nicholson, April 21st, it might be said that McGill never acquired an interest in the peach crop, and that the lien did not attach.

In support of the bank's contention that the growing peach crop was rightfully mortgaged as personal property, and the recordation of the chattel mortgage was constructive notice, counsel cite and quote from a great number of authorities, to the effect that crops produced by annual planting and cultivation, generally classified as fructus industriales, are treated as personal property. That appears to be recognized as the law in this state, where the owner of the land does not own the crop and the owner of the crop has no interest in the land, but where the owner of the land also owns the crop, it has been held that a sale of the land is a sale of the crop not severed from the land unless severed by reservation or exception. Meyers v. Hubbard, 80 Okla. 97, 194 Pac. 433. Some authorities are also cited, where it has been held that a crop of peaches or other orchard fruit is to be classed as fructus industriales. That has been held by the courts in Maryland, Missouri, and California. Purner v. Piercy, 40 Md. 212, 17 Am. St. Rep. 591; Smock v. Smock, 37 Mo. App. 56; Bulicebich v. Skinner, 77 Cal. 239, 19 Pac. 424.

The question generally has arisen in the sales of growing grass, fruits, or standing timber, where a contract of sale was not in writing, and one of the parties invoked the statute of frauds. Such contracts of sale have generally been held to be a constructive severance for the reason that the parties so intended, and not within the statute of frauds, but no court or text-writer, so far as we know, has ever said that standing timber or fruit before being severed from the tree was personal property.

In an early Texas case, Boykin v. Rosenfield et al., 9 S. W. 318, it was held that:

"A mortgage of growing timber to be cut and removed from the freehold is a mortgage of personal property and goes as a chattel mortgage."

Whether that case has been expressly overruled, we are unable to say, but it has been followed in later Texas cases, and in McVey v. United Timber & Kaolin Ass'n (Tex.) 270 S. W. 572, the opinion in Boykin v. Rosenfield was criticized in this language:

"In some states a very fine distinction has been drawn between cases in which immediate entrance on the land to remove the trees is contracted for, and those in which the time is not definitely fixed for taking possession of and severing the trees from the realty. We can see no other ground for the decision in Boykin v. Rosenfield, 69 Tex. 115, 9 S. W. 318, which has heretofore somewhat obscured the rule in Texas No authority is given in the case cited, except Jones on Chattel Mortgages. The Supreme Court of Texas in later opinions has cleared up the proposition, and, as said in Lodwick Lumber Co. v. Taylor, 100 Tex. 270, 98 S. W. 238, 123 Am. St. Rep. 803:

"'It is a well-settled proposition that trees may be so conveyed or reserved in a deed as to leave in one person a title in fee in the soil generally and in another a like title in the timber. Where this is the case there goes with the title to the timber the right to the use of the soil for its sustenance, and of entry upon the land for its enjoyment.'

"To the same effect are Houston Oil Co. v. Hamilton, 109 Tex. 270, 206 S. W. 817; Chapman v. Dearman, 111 Tex. 132, 229 S. W. 1112."

In vol. 24, Amer.-Eng. Ann. Cas. 736, in a note to Simmons v. Williford (Fla.) a number of cases are cited where it has been held that growing fruit on trees is part of the realty. In Sparrow v. Pond, 49 Minn. 412, 52 N. W. 36, also reported in 16 L. R. A. 103, 32 Am. St. Rep. 571, it was held that growing blackberries, although domestic and produced by cultivation, were a part of the realty. Practically all of the courts where the question has been considered have

held that a sale of the fruit crop prior to severance, though not in writing, is not within the statute of frauds, either upon the ground that the sale was a constructive severance or that it was intended by the parties that delivery be made after the severance.

In New York, Massachusetts, and Vermont, it has been held that chattel mortgages of fruit, grass, and growing timber, recorded as . such, are constructive notice, but the courts in these states so held upon the sole ground that title passed upon breach of the terms of the mortgage, and was therefore treated as a severance. In this state the title is in the mortgagor until foreclosure sale. Wichita Mill & Elevator Co. v. First Nat. Bank of Commerce, 102 Okla. 95, 227 Pac. 92; Balduff v. Griswold, 9 Okla. 438, 60 Pac. 223.

This brings us to a consideration of the case of Lawton Pressed Brick & Tile Co. v. Ross-Keller, 33 Okla. 59, 124 Pac. 43. In that case certain machinery was delivered to the owner of the land under a conditional sales contract, which was duly recorded as such, as required by law. The purchaser of the land without actual notice of the conditional sales contract claimed the machinery as a part of the realty. In an opinion by Mr. Justice Kane, this court held that the title did not pass and the owner of the machinery was entitled to recover even from an innocent purchaser. In that case the machinery was personal property at the time it was sold, and a conditional sales contract duly recorded was constructive notice. In this case the property was not in existence at the time the chattel mortgage was executed and filed.

For the reasons stated we conclude: First, that under the statutory classification of real and personal property, which includes all property, the growing peach crop was real property for the reason that it was attached to the land; second, that the mortgage lien of the bank did not attach for the reason that the mortgagor never became the owner; third, that though a growing fruit crop may · be constructively severed by a sale, a mortgage of such crop in this state will not work a severance for the reason that title does not pass from the mortgagor until there has been a foreclosure sale of the property; fourth, that even though such fruit crop be properly classified as fructus industriales by reason of the cultivation and care required to be given to produce the crop, such classification cannot render the growing crop personal property under the statutes of this state; fifth, that a mortgage of the growing fruit crop to be constructive

notice to purchasers of the land in good faith must be filed and recorded as a mortgage of real property.

For the reasons stated the judgment is reversed, with directions to dismiss the action.

By the Court: It is so ordered.

Note.—See under (1) 17 C. J. p. 379 §1. (2) 11 C. J. p. 541 § 229.